and void, and to enjoin the defendants from interfering with the property described in said instruments, or claiming any title thereto at a sale thereof by the plaintiff. A state court is not debarred from jurisdiction in such an action by the provisions of the bankrupt act of 1898. Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. The objection to the orders under review is that they practically dispose of the litigation in favor of the plaintiff before trial. There is no answer in the appeal book, but there is an affidavit of the defendant Conrad Muller, which puts at issue the allegations of the complaint which the plaintiff must establish to entitle him to the judgment which he asks. The moving papers make out a proper case for the appointment of a receiver pendente lite to take and preserve the property until final judgment. There was no necessity or occasion, however, for ordering a sale prior to the determination of the controversy. See Brush v. Jay, 113 N. Y. 482, 21 N. E. 184. It is not a justification for taking. away and selling a man's possessions. under such circumstances to tell him that he may assert his claim against the proceeds just as well as against the property.

The order appointing the receiver should be modified by striking out the provision authorizing a sale, and by restricting the powers of the receiver to the preservation of the property pending the action. As thus modified, it should be affirmed, without costs. As the injunction relates solely to the proposed sale, and we think there should be no sale before judgment, the injunction should be dissolved, with costs to the appellant. The appeal from the order refusing to modify the injunction should be dismissed, without .costs.

Ordered accordingly. All concur.

---

(67 App. Div. 151.)

CUMMER LUMBER CO. v. ASSOCIATED MANUFACTURERS' MUT. FIRE INS. CORP. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 23. 1901.)

1. FOREIGN CORPORATIONS—GENERAL CORPORATION LAW—DOING BUSINESS IN STATE—CERTIFICATE OF SECRETARY OF STATE—NECESSITY—ACTION IN STATE.

Gen. Corp. Law, § 15, provides that no foreign stock corporation shall do business in the state until it has procured a certificate from the secretary of state of compliance with certain provisions of law, and that no foreign stock corporation doing business in the state shall maintain any action on any contract made in the state till it has such a certificate. Held, that where a manufacturing corporation located in another state employed an agent in the state to solicit orders and make estimates. of material to be furnished therefor, which agent was paid by commissions on orders sent in by him, such orders being subject to acceptance by the principal and filled directly from the home office, such corporation was not doing business in the state so as to be precluded from suing on a fire insurance policy written in the state without first obtaining a certificate from the secretary of state.

2. SAME.

Nor was it doing business in the state by taking out a fire insurance policy in a domestic insurance company on its plant and material through insurance brokers in the state.

**3.** INSURANCE—PROOF OF LOSS—ACCEPTANCE—DEFECTS—ESTOPPEL.

Where a fire insurance company receives and retains proofs of loss without pointing out to the insured alleged defects therein, it is estopped to set up such defects as a defense to an action on the policy.

**4.** INSURANCE—LOSS—RISK—INCREASE—DISCHARGE OF INSURER.

A fire insurance policy on a sawmill stipulated that the insured should use due diligence to maintain in complete working order the automatic sprinkler system then in use, and that no change should be made in such system without the consent of the insurer. During the life of the policy a heavy frost froze the water in the sprinkler, and burst some of its pipes, and, though extra care in watching the plant was taken and immediate steps were taken to have the sprinkler repaired by the concern which installed it, a loss by fire occurred before the repairs were complete. *Held*, that the accident to the sprinkler system was not an increase of risk which would relieve the insurer from liability for the loss.

**5.** SAME—POLICY—CONSTRUCTION—CHANGE OF SYSTEM.

The repairs to the sprinkler were not a change in the system, within the meaning of the policy, so as to discharge the insurer.

Appeal from judgment on report of referee.

Actions by the Cummer Lumber Company against the Associated Manufacturers' Mutual Fire Insurance Corporation of the state of New York. From judgments in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Archibald C. Shenstone, for appellant.

William B. Ellison (Rufus L. Weaver, on the brief), for respondent.

WOODWARD, J. The plaintiff brings two actions to recover upon two certain insurance policies written by the defendant upon property of the plaintiff, located at Jacksonville, Fla. The property covered by one of the policies was the lumber in the plaintiff's yard, and the other was the sawmill buildings, machinery, dry kilns, dry sheds, docks, etc. The defenses interposed were practically the same in each case, and the cases were tried as one before a referee, who was chosen by consent to hear and determine the issues. The answers, as amended upon the trial, set up the defense that the plaintiff's case falls within the inhibition of section 15 of the general corporation law of the state of New York, which forbids a foreign corporation, doing business in this state, to bring an action upon a contract made in this state, unless it first obtains a certificate to do business from the secretary of state; that there was a change in the exposure of the property covered by the policies; that the plaintiff has failed to show a compliance with the conditions precedent required by the policy, etc. The learned referee found all of the facts in favor of the plaintiff, and reached the conclusion that judgments should enter upon the facts found in favor of the plaintiff. From the judgments entered appeal comes to this court.

The plaintiff in this action is a foreign corporation, engaged in the manufacture and sale of lumber at Jacksonville, Fla. The defendant is a domestic fire insurance company, duly organized and doing business under the laws of the state of New York, and having its principal place of business in the borough of Brooklyn. Some time

prior to February 6, 1899, the plaintiff, through a firm of insurance brokers in the city of New York, took out the two policies in suit, the defendants undertaking to pay any loss or damage which the plaintiff might sustain during the term from February 6, 1899, at noon, to March 21, 1900, at noon. On March 12, 1899, while these policies were in force, the property of the plaintiff was destroyed by fire, and, although there were over 20 companies holding risks upon this property, the defendant alone contests payment.

The theory of the defendant is that the plaintiff, being a foreign corporation, and concededly not having complied with the conditions of section 15 of the general corporation law, should have been denied the aid of the courts of this state to enforce these contracts of insurance, on the ground that the plaintiff was doing business in this state within the meaning of the statute. The evidence established the fact that the plaintiff employed an agent within this state to solicit orders and to make estimates upon lumber to be supplied by the plaintiff, and that this agent had an office in the city of New York, whose compensation was determined by the commissions earned at the rate of 25 cents per thousand feet of lumber sold. The orders were sent from New York to the plaintiff in Jacksonville, where they were accepted, and the bills and the goods were sent direct from the home office in Jacksonville to the customers; and upon these facts, coupled with the fact that the contract of insurance was made in this state through the agency of the firm of insurance brokers, the defendant insists that the plaintiff was doing business in this state, and that it is within the inhibition of the provision of the general corporation law mentioned above.

We think this position is not tenable; that it was not the intention of the legislature to exempt its insurance corporations from the obligations of their contracts by any such transparent fraud upon those who had paid for the protection which the defendants held themselves out as affording. The plaintiff's agent was no more than a traveling salesman, with permanent headquarters in the city of New York, and the evidence clearly shows that he maintained, not an office of the plaintiff, but an office for his own use, and he did business in this state for the plaintiff only in the sense that every traveling salesman for an individual or a corporation having a domicile or place of business outside of this state does business for his employer by soliciting orders to be approved and accepted at the home office. The suggestion that the plaintiff was doing business in this state in taking out its policy of insurance here is too absurd to be considered seriously; for the legislature is not to be presumed to have intended that it was necessary to bring the patronage and the profits of insurance into this state, and to protect those who thus contributed to the prosperity of the state, that each foreign corporation so taking out a policy of insurance upon its property in another state should be compelled to have a certificate which would enable it to transact its general business in the state of New York. Such a condition, if violating no positive provisions of the state or national constitutions, would be opposed to public policy, and it is the duty of the courts to give a reasonable construction to statutes, not to

read into them provisions which the legislature cannot be reasonably supposed to have intended. The section of the general corporation law under which the defendant seeks to be relieved of its obligation to fulfill its contract with the plaintiff clearly indicates the scope of the law, which merely undertakes to regulate the business of foreign corporations, so that they shall not do business under more advantageous terms than those allowed to the corporations of this state. It has no relation whatever to the incidental contracts of a foreign corporation, made with a domestic corporation, such as the insurance of the property of a lumber company organized under the laws of Florida, and doing business in that state. The provisions of the section, without those expurgations which tend to give construction to the whole, make plain what the legislature intended. It reads as follows:

"No foreign stock corporation other than a monied corporation, shall do business in this state without first having procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business, or, if more than one kind of business, by two or more corporations so incorporated for such kinds of business respectively. The secretary of state shall deliver such certificate to every such corporation so complying with the requirements of law. No such corporation now doing business in this state shall do business herein after December 31, 1892, without having procured such certificate from the secretary of state, but any lawful contract previously made by the corporation may be performed and enforced within the state subsequent to such date. No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

The condition upon which the certificate of the secretary of state is to issue is "that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business"; and its intent is further indicated by section 16 of the same act, which provides that "before granting such certificate the secretary of state shall require every such foreign corporation to file in his office a sworn copy in the English language of its charter or certificate of incorporation, and a statement under its corporate seal, particularly setting forth the business or objects of the corporation which it is engaged in carrying on, or which it proposes to carry on, within the state, and a place within the state which is to be its principal place of business, and designating in the manner prescribed in the Code of Civil Procedure a person upon whom process against the corporation may be served within the state. The person so designated must have an office or place of business at the place where such corporation is to have its principal place of business within the state." This language clearly contemplates the transaction of the business for which the foreign corporation was primarily organized, and not the incidental business of insuring its property located in another state, nor yet the employment of an agent to solicit orders to be sent to and accepted by such foreign corporation doing business in another state. This statute was simply declaratory of the policy

of the state that foreign stock corporations should not carry on any business in this state which similar corporations organized under its laws could not lawfully conduct. Its purpose was not to avoid contracts, but to provide an effective supervision and control of the business proposed to be carried on here by foreign corporations (Neuchatel Asphalte Co. v. Mayor, etc., of the City of New York, 155 N. Y. 373, 377, 49 N. E. 1043); and it is absurd to contend that it had any reference to the facts established by the evidence in the case at bar. To permit the defendant to accept and retain the consideration of its contracts of insurance upon the property of foreign corporations located in other states, and where the primary business of such corporations is carried on, and then to avoid the obligation by pleading that such foreign corporation was doing business in this state, under the facts disclosed by the evidence, would be shocking to every sense of justice, and the contention of the defendant cannot prevail.

We are equally persuaded that the plaintiff has performed all of the conditions precedent necessary to maintain this action, and that the defendant, having received and retained the proofs of loss, without pointing out to the plaintiff the defects which it now urges, if we assume them to be defects, is estopped from setting up such alleged defects in defense. Joyce, Ins. § 3362, and authorities there cited; Trippe v. Society, 140 N. Y. 23, 28, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529.

Nor can we agree with the defendant in the contention that there was no evidence of value at the time and place of the fire. The evidence is quite complete and satisfactory. Mr. Cummer was shown to be fully familiar with the construction and cost of buildings and machinery, such as were involved in this controversy, and he testifies as to the value of the property and its destruction with quite as much detail as was necessary under the circumstances, no one having challenged the presumption that the statements of loss were true.

The principal point upon the merits arises under that provision of the contract of insurance which provides:

"It is understood and agreed that this policy is issued, and the rate of premium charged therein fixed and determined, on condition that the assured shall use due diligence to maintain in complete working order, at all times during the full term of this insurance, the automatic sprinkler system now in use, and that no change shall be made in such system without the consent in writing first obtained of this company."

On the 8th day of February, 1899, it is conceded that there was a sprinkler system installed and in working order in the buildings upon the premises of the insured. On the 12th day of February there was a freeze, which froze the heads of the water pipes, and broke some of the heads, pipes, and fittings in the exposed part of the plant, and the sprinkler system thus became inoperative. Before the pipes, fittings, etc., could be procured, and the system repaired, the fire which caused the destruction of the property occurred; and although the evidence shows that the plaintiff used more than ordinary care to keep watch of its plant, and to provide protection, and that it used a degree of diligence which can hardly be claimed to be less than

"due diligence," the defendant urges that by reason of the sprinkler system being out of order the risk was increased, and that the repairs in the system constituted a change, etc., vitiating the contract. This is rather an excuse for contesting payment than a legal obstacle to the plaintiff's right of recovery. The contract, fairly and intelligently read, contemplates that the system may get out of order, and it provides for this contingency by requiring the plaintiff to use due diligence to restore it to its normal efficiency. The provision that there shall be no change does not relate to changes in pipes, fixtures, etc., as the defendant would have us believe, but to the system. The provision of the contract is that "no change shall be made in such system"—the system approved by the contract—without the consent of the company. There was no change in the system. The plaintiff applied to the company which installed the system, ordered the fixtures necessary to make the repairs, and sent for the company's expert to make them, and the work was well under way at the time of the fire. The plaintiff had certainly performed its part of the contract. The evidence shows that everything within reason was done to put the system in order, and that the plaintiff employed extra watchmen during the time that the system was out of order, and that no rights of the defendant were prejudiced by any action, or by any failure to act, of the plaintiff.

We have examined all of the matters called to our atention, we have considered the evidence as we find it in the record, and we are convinced that the judgments entered are in accord with justice and the law, and that they should be affirmed, with costs. All concur.