CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Judgment affirmed.

---

THE EAST COAST OIL COMPANY, S. A., Appellant, *v.* HARRY B. HOLLINS, Respondent, Impleaded with RAFAEL R. GOVIN and BRITON N. BUSCH, Defendants.

THE EAST COAST OIL COMPANY, S. A., Appellant, *v.* HARRY B. HOLLINS and BRITON N. BUSCH, Defendants, Impleaded with RAFAEL R. GOVIN, Respondent.

THE EAST COAST OIL COMPANY, S. A., Appellant, *v.* HARRY B. HOLLINS and RAFAEL R. GOVIN, Defendants, Impleaded with BRITON N. BUSCH, Respondent.

First Department, May 17, 1918.

Corporations — action by foreign corporation — pleading — condition precedent — allegation of compliance with section 15 of General Corporation Law.

Where, in an action by a foreign corporation against the guarantors of a contract between the plaintiff and another foreign corporation, it appears that said contract was made within this State, and that payments

thereunder were to be made at the plaintiff's office in the city of New York, it is a condition precedent to the maintenance of the action that section 15 of the General Corporation Law should have been complied with prior to entering into the contract, and a failure to allege such compliance renders the complaint demurrable.

SMITH and SHEARN, JJ., dissented, with opinion.

SEPARATE APPEALS by the plaintiff, the East Coast Oil Company, S. A., from three orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of January, 1918, denying plaintiff's motion to overrule the separate demurrers of the several defendants to the complaint and sustaining said separate demurrers, with leave to plaintiff to serve an amended complaint.

*J. Ard Haughwout* of counsel [*Everett J. Esselstyn* with him on the brief], for the appellant.

*Stephen P. Anderton* of counsel [*Roy M. Robinson* with him on the brief; *Beekman, Menken & Griscom,* attorneys], for the respondent Hollins.

*Edward D. Brown* of counsel [*Harry P. Rodman* with him on the brief], for the respondent Govin.

*Nathan Vidaver,* for the respondent Busch.

PAGE, J.:

The complaint alleges that the plaintiff is a foreign corporation organized and existing under the laws of the Republic of Mexico; that the plaintiff operated petroleum-producing territory upon which it had opened certain petroleum wells and upon which it proposed to open other petroleum wells, and that on or about the 1st day of July, 1912, at New York city, in the State of New York, the plaintiff and the Toltec Mexican Oil Company, a foreign corporation organized and existing under and by virtue of the laws of the State of Delaware, duly entered into an agreement in writing, a copy of which is annexed to the complaint, and that at the time of the making of the said contract the defendants duly signed and delivered to the plaintiff at the city of New York a contract wherein and whereby they unconditionally guaranteed to the

plaintiff the due performance and observance of said agreement by the Toltec Mexican Oil Company. The complaint then alleges certain modifications of the contract with the consent of the defendants, and delivery during the months of March and April, 1914, of 60,006 barrels of petroleum, for which the Toltec Mexican Oil Company was indebted to the plaintiff in the sum of $30,003; that the Toltec Mexican Oil Company wholly neglected and refused to pay said sum, and that the defendants have wholly failed and refused to pay, and that the plaintiff has duly performed all the terms of the contracts on its part to be performed.

The second cause of action is to recover for certain other petroleum in addition to that alleged in the first cause of action and under the same contract, amounting to $19,250.

The third cause of action alleges the tender to the Toltec Mexican Oil Company of certain other petroleum that it had in storage pursuant to the same contract, and the refusal on the part of the Toltec Company to receive the same, and further alleges that on or about June nineteenth the said Toltec Company wholly repudiated said contract and refused to be bound thereby and notified said plaintiff that it had canceled said contract, and that as a result of the breach of the contract the plaintiff has been damaged in the sum of $2,500,000, no part of which has been paid, although demanded.

By reference to the contract which is annexed to the complaint and becomes a part thereof, it appears that the plaintiff agreed to sell to the Toltec Mexican Oil Company its entire production of oil from the wells then opened or to be opened for a period of ten years from the date thereof, and that payments therefor were to be made to the plaintiff at its office in the city of New York, and furthermore that all notices to be given thereunder by the purchaser to the vendor should be given at the latter's office in New York or at any other point, as the vendor might from time to time request; and the 15th paragraph provides that this contract is to be interpreted according to the laws of the State of New York.

The defect in the complaint, which is the ground of demurrer, is that there is no allegation that the corporation, prior to the making of this contract, had complied with section 15 of the General Corporation Law and obtained a certificate

authorizing it to do business in this State. The plaintiff's counsel argued that the plaintiff had not transacted any business in this State and had no office therein. The complaint does not admit of that construction. The contract upon which the action is founded was made within the State. It provided that the performance of the contract, as to the payment for its entire product for the succeeding ten years, should be made at its office in the city of New York. It thus speaks of a present office. The language is not at an office hereafter to be established in the city of New York. Furthermore, by the very terms of the contract, it is a New York contract, to be interpreted according to the laws of this State. It is, therefore, a condition precedent to the maintenance of the action that section 15 of the General Corporation Law should have been complied with prior to entering into the contract. (Consol. Laws, chap. 23 [Laws of 1909, chap. 28], § 15, as amd. by Laws of 1917, chap. 594; *Wood & Selick* v. *Ball,* 190 N. Y. 217; *Woodridge Heights Const. Co.* v. *Gippert,* 92 Misc. Rep. 204, 206.) If there were any facts that would have excused compliance with the condition precedent, they should have been set forth.

The orders sustaining the demurrers to the complaint were right and should be affirmed, with ten dollars costs and disbursements, with leave to plaintiff to serve an amended complaint upon payment of said costs and the costs awarded upon the motion at Special Term.

CLARKE, P. J. and LAUGHLIN, J., concurred; SMITH and SHEARN, JJ., dissented.

SMITH, J. (dissenting):

The plaintiff, a Mexican corporation, made a contract in New York city with the Toltec Mexican Oil Company, a Delaware corporation, for the sale and delivery to the Toltec Company of the output of the Mexican Company's oil wells located in Mexico, the delivery to be made at Tampico, Mex., to commence within ten months after the date of the contract, and payments were to be made by the Toltec Company sixty days after delivery in each month at the Mexican Company's " office in New York." The defendants herein

are guarantors of the above contract under the name of H. B. Hollins & Co. The complaint does not allege that the plaintiff had obtained the certificate of authority to do business in this State required by section 15 of the General Corporation Law, and the defendants have separately demurred to the complaint as not stating a cause of action, claiming that it appears on the face of the complaint that plaintiff was doing business in the State of New York when it executed the contract in question.

A foreign corporation has the right to appeal to the courts of this State to enforce a contract made in this State, without having obtained the certificate provided for in section 15 of the General Corporation Law, *unless* it had been actually doing business in this State when the contract was made. The section 15 above mentioned so far as applicable to this case is as follows:

" No foreign stock corporation other than a moneyed corporation, shall do business in this State without having first procured from the Secretary of State a certificate that it has complied with all the requirements of law to authorize it to do business in this State. * * * No foreign stock corporation doing business in this State shall maintain any action in this State upon any contract made by it in this State, unless prior to the making of such contract it shall have procured such certificate." (See Consol. Laws, chap. 23 [Laws of 1909, chap. 28], § 15, as amd. by Laws of 1917, chap. 594.)

On demurrer the facts stated must be taken as true and all doubtful or uncertain statements must be construed favorably to the complaint. A complaint in an action by a foreign corporation is not demurrable for the failure to allege compliance with the above section 15, unless it appears on the face of the complaint that the corporation is doing business in this State and that it made the contract sued upon in this State. It is stated in *Frick Co.* v. *Pultz* (162 App. Div. 209, 212): " Under this authority a complaint states a good cause of action and is not demurrable unless it appears on the face of the complaint that the foreign corporation was doing business in this State and that it made the contract sued upon in this State." And in *Acorn Brass Mfg. Co.* v. *Rutenberg* (147 App. Div. 533, 535) it is stated: " Before the obtaining of such

certificate becomes a material fact in connection with such an action, two things must concur, the corporation must be a foreign stock corporation, other than a moneyed corporation, doing business in this State, and the contract which is the basis of the action must have been made within the State."

The connection of the *two* facts, namely, doing business *and* making the contract in this State as prerequisites to the requirements that the certificate should have been obtained, shows conclusively that the making of the contract is not evidence of doing business in this State.

The making of a single contract or of two connected contracts is not doing business in this State. In *Haddam Granite Company, Inc.,* v. *Brooklyn Heights R. R. Co.* (131 App. Div. 685, 687) it is stated: " At the outset there was an attempt to negotiate a single contract and, pending the negotiations, after the price of the material had been agreed upon, but before all the particulars of the contract, with respect to quantities and times of delivery, had been settled, deliveries were made on the terms as to price, which were to be incorporated in the contract which was then being negotiated. The negotiations originated in this State, but were continued largely by correspondence between the officers of the respective corporations, one of which was within and the other without the State. These facts do not show that the plaintiff *was either continuously or permanently* engaged in business in this State." And in *Singer Mfg. Co.* v. *Granite Spring W. Co.* (66 Misc. Rep. 595), it is said: " I think the statute intended to refer only to the *doing of the regular and customary business* for which the corporation was organized."

Doing business in this State relates to the ordinary business a corporation is organized to do. In *Cummer Lumber Co.* v. *Associated Mfrs. Ins. Co.* (67 App. Div. 151, 156; affd., 173 N. Y. 633) it is said: " Its purpose was not to avoid contracts, but to provide an effective supervision and control of the business proposed to be carried on here by foreign corporations." And in *Penn Collieries Co.* v. *McKeever* (183 N. Y. 98, 103) it is said: " To bring into operation the statutory provision, the facts should show more than a solitary, if not accidental, transaction as was the one before us. They should establish that the corporation was conducting *a con-*

*tinuous business.* To be ' doing business in this State.' implies *corporate continuity of conduct in that respect;* such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances, which attest the corporate intent to avail itself of the privilege to carry on a business."

The making of one or two sales in this State is not doing business here. In *Vaughn Machine Co.* v. *Lighthouse* (64 App. Div. 138, 141) it is said: "The statute quoted    *    *    * contemplates a location, a domicile, having an office and the investment of some part of its capital within the State. Orders can then be transmitted and dealings had with it at this office, and the conduct of its business is thus transferred, in a measure at least, to the headquarters established within the territorial limits of this State. It thus settles within the State and enjoys the benefits incident to a domestic corporation, and the Legislature imposes requirements and obligations upon it by reason of the privilege conferred of doing business like a body corporate organized in this State. It was never intended to hamper trade and restrict interstate commerce by bringing within its ban every corporation which happens to cross the State boundary with its wares to supply customers who have ordered them from the home office."

In *Ozark Cooperage Co.* v. *Quaker City Cooperage Co.* (112 App. Div. 62, 64) it is said: "The complaint charges only two distinct sales, and we must assume the business conducted in this State is limited to these two transactions. This is not necessarily ' doing business ' within the meaning of the statute. In *Penn Collieries Co.* v. *McKeever* (183 N. Y. 98) the plaintiff, a foreign corporation, sued to recover for a cargo of coal sold in the State of New York. It kept no coal, books of account nor bank deposit in this State. The sale was an isolated transaction. The defendant endeavored to defeat a recovery for the reason that the plaintiff had not procured a certificate authorizing it to transact business in this State. The Court of Appeals held that the plaintiff was not ' doing business ' within the contemplation of the statute. The court used this language (at p. 103): ' To be ' doing business in this State ' implies corporate continuity of conduct in that respect; such as might be evidenced by the investment of

capital here, with the maintenance of an office for the trans- action of its business, and those incidental circumstances, which attest the corporate intent to avail itself of the privilege to carry on a business. In short, it should appear, as it was intimated in the opinion in *People ex rel. Armstrong Cork Co.* v. *Barker* (157 N. Y. 159, 165), that the corporation and its officers intended ' to establish a continuous business in the City of New York and not one of a temporary character.' "

The maintaining of an office in this State is not *alone* proof of doing business here. (*System Co.* v. *Advertisers' Cyclopedia Co.*, 121 N. Y. Supp. 611, wherein it is said at page 612: " The fact that a foreign corporation has an office within this State, and employs solicitors to transmit orders obtained to the home office for acceptance, does not of itself constitute doing business within the meaning of the statute. Such action is merely incidental to the business which the foreign corporation conducts in another State.")

The first act of the plaintiff in this State, as alleged in the complaint, is the making of the two contracts above, both made at the same time and parts of one transaction. There was to be no performance of the contract in this State except as to payment for the oil. The oil was to be delivered to the Toltec Company in Mexico. There was to be no payment until sixty days after the oil began to be delivered, which could not occur for some considerable time because of the necessity of the construction of " pipe line, tanks and loading facilities " after the making of the contract. The only mention of an office of the plaintiff in New York is in connection with the payments to be made in all probability not less than six months to a year after the date of the con- tract and certainly in not less than sixty days, and in connection with notices which might be served on plaintiff by the Toltec Company, which would not be called for under the contract until May 1, 1913, ten months after the making of the contract. While the complaint alleges that the con- tracts were executed in New York, that alone is not proof that plaintiff was doing business at that time, particularly as the business provided for was all to be performed *in the future* outside of the State — in fact, outside of the United States. The payments provided to be made were also far

in the future and the mention of an office at which such payment could be made is no evidence of the fact that plaintiff had any office here at the time of making the contract. The fact is that no payments were made, as the Toltec Company declined to pay for any oil delivered and there was no reason for plaintiff maintaining an office for the purpose of receiving payment or notice. There is no allegation in the complaint that plaintiff had or has an office in New York, except the above implication that it would have an office in New York city in time to receive any possible payments or notices.

The section of the General Corporation Law relied on by the defendants and on which they have succeeded below, is in the nature of a forfeiture and to support a forfeiture no resort should be had to presumption. There being no direct allegation that plaintiff had or has an office in this State, the presumption possible from the wording of the contract should not be made use of to enable the defendants to defeat a just and lawful claim.

The making of such a contract to be entirely performed far away from the State of New York could not by any stretch of imagination be construed as interfering in any way with New York State business enterprises and the payment of money in New York State from business so conducted could only be of benefit to New York enterprises.

The business the plaintiff was organized and was attempting to do was the production, sale and delivery of oil in Mexico. The plaintiff did make the contract in question in the city of New York, but the facts recited in the complaint do not constitute doing business in New York so as to make section 15 of the General Corporation Law applicable.

The orders appealed from should be reversed, with ten dollars costs and disbursements.

SHEARN, J., concurred.

Orders affirmed, with ten dollars costs and disbursements, and with leave to plaintiff to amend on payment of costs.