AMERICAN SECURITY CREDIT COMPANY, Plaintiff, *v.* EMPIRE PROPERTIES CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, January 15, 1935.

*Edgar I. Ahrweiler*, for the plaintiff
*Samuel Komoroff*, for the defendant.

LEWIS, DAVID C., J. The plaintiff sues for certain fees and charges pursuant to a written contract. The defendant challenges its right to maintain this action because of the provisions of section 181 of the Tax Law and section 210 of the General Corporation Law.

The plaintiff is a foreign corporation. It has not complied with our statutes. If it was doing business in this State, and this contract was made here, the complaint must be dismissed.

What is the plaintiff's business? It styles itself American Security Credit Company. It does not deal in tangibles. It sells the right to its services as a collection agency, and also undertakes to supply a client with credit information, adjustment and other kindred facilities.

The first and fundamental step in the conduct of such business is to sign up clients. Other matters follow. These clients are the source and substance of its operations. Each client pays in advance a prescribed fee for the service, and furnishes accounts for collection. When dunning fails to collect, litigation may follow. For the one, the mail may serve; for the other, suit must be started. In one capacity, the corporate plaintiff can function; in the other, attorneys must be retained.

To what extent must a foreign corporation function within our State before it can be held to compliance with our statutes? Must it be held that unless all the activities of the corporation are regularly transacted in our jurisdiction, the foreign corporation is exempt from compliance with our laws? If so, then this foreign corporation, by its contracts, is allowed to escape control and to unfairly pre-empt this domestic field, to the disadvantage of our own citizens. I do not believe that controlling precedent necessitates such a holding. If the transactions completed within our State are vital and essential to its business and are regularly conducted here, the foreign corporation is doing business here.

" While defendant's business is that of selling merchandise to the public, it cannot pursue that business unless it has merchandise to sell. It does not manufacture any of the articles in which it deals; it must buy them. It cannot sell anything that it has not first bought from others." (*Fleischmann Construction Co.* v. *Blauner's,* 190 App. Div. 95, at p. 97.)

" No precise rules can be formulated by which to determine in each case whether a foreign corporation is doing business in a state. As has been said by the courts, this question must be largely decided by the particular facts in each case. But of course there are certain undisputed general principles which may be applied to the disposition of such a question. The fact that the corporation is *conducting the principal part of its business in the state of its incor-*

*poration does not prevent it from so prosecuting its business in another state as to bring it within the character of a corporation doing business in the latter state.* While it is true that the business which it is conducting in the latter state in order to give the courts thereof jurisdiction over it for the purposes now being discussed *must be part of the business for which it was organized, it cannot be necessary in every case that the transactions in said latter state shall be the performance of those particular acts which constitute the characteristic feature of the business for which the corporation was organized.*" (Italics mine.) (*Pomeroy* v. *Hocking Valley R. Co.,* 218 N. Y. 530, at p. 535.)

Unless the court construes these transactions as " doing business " within our State, the business of this foreign corporation would be free from assessment and its transactions free from attack and our citizens denied their protection, and the purpose of the statute defeated. Such inequity offends justice.

" The section of the General Corporation Law, under which the defendant seeks to be relieved of its obligation to fulfill its contract with the plaintiff, clearly indicates the scope of the law, which merely undertakes to regulate the business of foreign corporations, so that they shall not do *business under more advantageous terms than those allowed to the corporations of this State.*" (Italics mine.) (*Cummer L. Co.* v. *Associated Mfrs. Ins. Co.,* 67 App. Div. 151, at p. 154.)

From the very nature of the plaintiff's business, the pursuit of its enterprise carries it into the territory of the debtors and the respective creditors. Their locations chart, if they do not determine, the jurisdiction in which such a business operates or is carried on. Mere contract provisions cannot limit the actual sphere of these operations.

Were the transactions in our State incidental to the conduct of interstate commerce, we would have to bow to the immunity of interstate commerce, and neither our courts nor our laws could interfere or impede. (*International Text Book Co.* v. *Tone,* 220 N. Y. 313, at p. 318.) And an obligation born of interstate intercourse may inherit this immunity. (*Furst* v. *Brewster,* 282 U. S. 493.)

In the present case the court is not dealing with an isolated transaction or acts linked to interstate commerce. It is confronted with a series of similar transactions consummated within our jurisdiction, spread over a long period. For this plaintiff has been closing these transactions and securing this business in our State over a span of fifteen years — not by casual or periodic visits to our State, but through and by an office maintained here.

The following particulars with reference to the plaintiff's acts within our State, though not necessarily determinative, lend further sanction to the court's holding.

1. An active bank account in New York city for nineteen years.

2. Lease of premises in plaintiff's name in New York city.

3. Plaintiff has maintained an office in New York city since 1919.

4. Plaintiff has a telephone in its own name.

5. Plaintiff is listed in building and telephone directories.

6. Plaintiff employs three to fifteen salesmen in New York State regularly.

7. All checks to pay salaries of plaintiff's employees are drawn in the plaintiff's name on plaintiff's bank account in New York city.

8. a. Plaintiff has entered into approximately 250 contracts described as: " Q. Written in New York State? A. Yes. New York State."

b. Plaintiff has entered into approximately fifty contracts a year in New York State.

9. Plaintiff does a yearly business of approximately $20,000 a year.

Upon this showing why is not this court warranted in ruling that the plaintiff has been doing business in New York?

The plaintiff cites *International Text Book Co.* v. *Tone* (220 N. Y. 313, *supra*). In that case the opinion tells us: " Their sole duty is to solicit pupils, whose applications for membership *must be sent to the home office for acceptance.* No contracts are closed here. * * * No books are sold here " (p. 316). (Italics mine.)

The *Tone Case* (*supra*) stresses the right of a foreign corporation to engage in State activities incidental to commerce between the States free from regulation or restraint of our State. The court further ruled that the question of a foreign corporation being required to take out a State license is one of " statutory construction," and not a question of the " jurisdiction of the courts under the rules of private international law." (*International Text Book Co.* v. *Tone, supra,* at p. 318.)

To release the corporation from compliance with our laws requires something more than a mere clause in its contracts making its transactions here subject to approval abroad. (*American Case & Reg. Co.* v. *Griswold,* 143 App. Div. 805; S. C., 145 id. 901; affd., 206 N. Y. 723.)

And unless we cross the path of interstate commerce or breach constitutional rights, the court need not fear the Federal rulings. For subject to these limitations, the State courts may independently decide whether a foreign corporation is doing business in this

jurisdiction within the purview of our statutes. (*Kansas City Steel Co.* v. *Arkansas*, 269 U. S. 148; *Halpin* v. *North American Refrac. Co.*, 151 Misc. 764.)

One other question remains: Was this contract made within our State? In March, 1931, this defendant, at the city of New York, upon solicitation by the plaintiff's representative, executed the special form (Defendant's Exhibit A), prepared and provided by this plaintiff, which distinctly states: " We have this day accepted the offer of your services * * * upon the printed terms and conditions of contract Series I."

In addition to the defendant's signature, this exhibit bears the signature of a representative of the plaintiff, to wit, one George H. Deters.

At the time of the execution of this card of acceptance by the defendant, the defendant also uttered its check in the sum of $500 and then and there turned over the check and the card of acceptance to the plaintiff's representative. And thereupon and on the same day the said representative of the plaintiff deposited this check in the bank account maintained in the name of the plaintiff at the Bankers Trust Company at the city of New York.

Shortly after March 31, 1931, the said contract designated series I was received by the defendant.

The opening paragraph of this exhibit reads: " that Empire Properties Corporation of New York, as client, has engaged the services of American Security Credit Company * * * for the period of three years from the date of acceptance of this contract as *evidenced by the signed card of acceptance.*" (Italics mine.)

At the very end of the said plaintiff's Exhibit 1 appears the printed expression: " In witness whereof the company has executed and attested these presents at the City of St. Louis, to be effective from the date the acceptance is received at the office of the company at St. Louis, Mo."

It is behind this attestation clause and the reference clause in defendant's Exhibit A that the plaintiff would seek refuge and claim immunity. This argument can only shine if inconsistency is a jewel.

At the inception the plaintiff ties up a client with a signed, express acceptance of the plaintiff's offer and an advance payment of a $500 fee. The offer and acceptance are not contingent. The sale of the service privilege is absolute. The right of the defendant to the services became vested.

After this event, in order to make the client's acceptance doubly sure, the plaintiff forwarded the series I contract. The introductory paragraph of the formal agreement expressly and explicitly reaffirms

the acceptance of the contract by " the signed card of acceptance." And then, by the ingenious phrase in the attestation clause, seeks to throw the transaction into reverse.

The plaintiff cannot contort the reference in the card of acceptance to " the printed terms of the contract Series I," into a destruction of the contract. The minds of the parties met; the contract came into existence. Its formal execution might be deferred, but its existence could not be destroyed. There is nothing unusual in such a reference to a standard form as indicative of the terms of a contract actually made. This practice is not infrequently followed in leases of real estate, as well as in other transactions.

" And, while admitting the making of the formal agreement set forth by the plaintiff, which recites that the contract was made in New Jersey, defendant alleges that the contract had, in fact, been made on the first day of April, but with the understanding that it should be subsequently formally evidenced, as it was, by the agreement of April thirteenth." (*Ohl & Co.* v. *Standard Steel Sections, Inc.*, 179 App. Div. 637, at p. 639.) (See, also, *Jones* v. *Cunard Steam Ship Co., Ltd.*, 238 App. Div. 172.)

It is established that from negotiation to execution New York was the locus. The contract is a New York contract.

Nor must it be ruled that the performance of the contract essentially entailed regular, continuous interstate intercourse, so as to bring it within the exclusive realm of interstate commerce.

The essential elements presented in the case of *International Text Book Co.* v. *Pigg* (217 U. S. 91) are absent from the present case.

It is recognized that interstate commerce is not limited to the sale or carriage of tangibles. Instead of ordinary merchandise, a course of instruction may be the subject-matter; instead of the transportation of one, we may have the transmission of the other; instead of train or auto, mail or radio may be the vehicle, correspondence or broadcasting the method; notwithstanding interstate commerce may claim jurisdiction. (*International Text Book Co.* v. *Pigg, supra; American Bond & Mtge. Co.* v. *United States*, 52 F. [2d] 318, at p. 322.)

But all transactions between a corporation domiciled in a foreign State and a resident of New York do not necessarily come within the province of interstate commerce. ' To bring such transactions under the wing of interstate commerce, they must involve regular, practically continuous interstate intercourse; and it should also " especially " appear that such intercourse and communication really relate to matters of regular continuous business.

" It involved, as already suggested, *regular and practically continuous intercourse between the Text-book Company, located in Penn-*

*sylvania, and its scholars and agents in Kansas and other states.*
That intercourse was conducted by means of correspondence
through the mails with such agents and scholars. While this
mode of imparting and acquiring an education may not be such
as is commonly adopted in this country, it is a lawful mode to
accomplish the valuable purpose the parties have in view. More
than that; this mode — looking at the contracts between the
Text-book Company and its scholars — involved the transportation
from the state where the school is located to the state in which
the scholar resides, of books, apparatus, and papers, useful or
necessary in the particular course of study the scholar is pursuing,
and in respect of which he is entitled, from time to time, by virtue
of his contract, to information and direction. Intercourse of that
kind, between parties in different states,— particularly when it is
in execution of a valid contract ·between them,— is as much
intercourse in the constitutional sense, as intercourse by means of
the telegraph, a new species of commerce, to use the words of
this court in *Pensacola Teleg. Co.* v. *Western U. Teleg. Co.*, 96
U. S. 1, 9; 24 L. ed. 708, 710. In the great case of *Gibbons* v.
*Ogden*, 9 Wheat. 1, 189; 6 L. ed. 23, 68, this court, speaking by
Chief Justice MARSHALL, said: ' Commerce, undoubtedly, is traffic,
but it is something more; it is *intercourse.*' Referring to the
constitutional power of Congress to regulate commerce among the
states and with foreign countries, this court said in the *Pensacola
Case*, just cited, that ' it is not only the right but the duty of
Congress to see to it that *intercourse* among the states and *the
transmission of intelligence* are not obstructed or unnecessarily
encumbered by state legislation.' This principle has never been
modified by any subsequent decision of this court.

" The same thought was expressed in *Western U. Teleg. Co.*
v. *Pendleton*, 122 U. S. 347, 356, where the court said: ' Other
commerce deals only with persons, or with visible and tangible
things. But the telegraph transports nothing visible and tangible;
it carries only *ideas, wishes, orders*, and *intelligence.*' It was said
in the Circuit Court of Appeals for the Eighth Circuit, speaking
by Judge SANBORN, in *Butler Bros. Shoe Co.* v. *United States Rubber
Co.*, 156 Fed. Rep. 1, 17, that ' all interstate commerce is not sales
of goods. Importation into one State from another is the indis-
pensable element, the test, of interstate commerce; and every
negotiation, contract, trade, and dealing between citizens of differ-
ent States, which contemplates and causes such importation,
whether it be of goods, persons, or *information*, is a transaction of
interstate commerce.' If intercourse between persons in different
States by means of telegraphic messages conveying intelligence or

information is commerce among the States, which no State may directly burden or unnecessarily encumber, we cannot doubt that intercourse or communication between persons in different States, by means of correspondence through the mails, is commerce among the States within the meaning of the Constitution, *especially where, as here, such intercourse and communication really relates to matters of regular, continuous business* and to the making of contracts and the transportation of books, papers, etc., appertaining to such business. In our further consideration of this case we shall therefore assume that the business of the Textbook Company, by means of correspondence through the mails and otherwise between Kansas and Pennsylvania, was interstate in its nature." (*International Text Book Co.* v. *Pigg,* 217 U. S. 91, 107; 54 L. Ed. 679, at p. 685.)

This court is of the opinion that the plaintiff was doing business within our State within the meaning of our statutes; that the contract was made within our State; and that the rights that sprung from the contract were not the outgrowth of interstate commerce or communication.

The complaint must be dismissed. Ten days' stay.