**JELLICO GROCERY COMPANY, Inc.,**
**Plaintiff,**

v.

**NEW ENGLAND INSURANCE COMPANY, Defendant.**

**No. 1005.**

United States District Court
E. D. Kentucky.

June 10, 1960.

Brown & Tooms, London, Ky., for plaintiff.

Ogden, Brown, Robertson & Marshall, Louisville, Ky., Glenn Stephens, Williamsburg, Ky., for defendant.

HIRAM CHURCH FORD, Chief Judge.

This case is submitted upon the motion of the defendant for summary judgment in its favor, as a matter of law, in view of certain undisputed facts shown by the pleadings, depositions and affidavits on file.

The undisputed facts disclosed by the record which are pertinent upon consideration of the defendant's motion are, in substance, as follows:

1. The plaintiff seeks to recover under a fire insurance policy issued by the defendant covering plaintiff's stock of goods and merchandise which was damaged and destroyed by fire while contained in its building at Corbin, Ky., on July 23, 1958.

2. The policy in suit contains the following endorsement:

"Automatic Sprinkler Clause No. 2.

"This policy being written at a rate based on the protection of the premises by the sprinkler system, it is a condition of this policy that, in so far as the sprinkler system and water supply therefor are under the control of the Insured, due diligence shall be used by the Insured to maintain them in complete working order, and that no change shall be made in the said system or in the water supply therefor unless immediate notification is given to the Kentucky Inspection Bureau. Permission, however, is hereby given in case of break, leakage, or the opening of sprinkler heads, to shut off the water from so much of the sprinkler system as may be imperatively necessary, it being a condition of this policy that Kentucky Inspection Bureau will be immediately notified and the protection restored as promptly as possible."

3. One morning in the last week of February, 1958, at about 4 A.M., two city policemen aroused G. E. West, manager of plaintiff's store, at his home in Corbin and informed him that the alarm connected to the sprinkler system in the store was sounding. On going to the store they found the alarm sounding but no fire. The alarm had become activated due to the fact that severely cold weather had caused a reduction in the air pressure within the system. Known as a

dry bell system, it functioned by means of air pressure which holds back the water until fire fuses the sprinkler heads releasing the air and automatically releasing the water. In this instance reduced air pressure had permitted the water to flow into the alarm system and activate it. However, on this occasion there was no break, leakage or opening of the sprinkler heads of the system.

In order to stop the alarm, West, the store manager, turned off the water supply at a cut-off valve outside the building. This valve, also referred to in the record as a gate valve, is located in a shallow well beside steps leading from the loading ramp at the rear of the premises. The valve is operated by a key, a "T" bar about four feet in length which fits down into the well and into the valve.

At about 6:30 A.M., on the same morning, West summoned Cager Reeves, a licensed plumber who had taken care of the sprinkler system about fifteen years. Within a short time Reeves had drained the water from the sprinkler system, reset the automatic valves and restored the air pressure. Thereupon, Reeves' employer, Lonas Smith, also a licensed plumber who had assisted in the maintenance of the sprinkler system for many years, turned on the water at the cut-off valve outside while Reeves checked the air pressure and water pressure gauges inside the building. West stood in the doorway and saw Smith turn on the water. The system was restored to proper operation by 11:30 A.M., on the morning the alarm had sounded. Reeves returned in approximately a week and inspected the gauges to make certain the system was in good working order. West regularly checked the water pressure and air pressure gauges on an average of twice a week between the date the alarm sounded in February, 1958, and the occasion of the fire on July 23, 1958, and noted normal pressures at all times during this period.

4. The fire occurred July 23, 1958. It started at approximately 9 P.M. in an adjoining building and spread to Plaintiff's store building. The fire was brought under control by about 10:30 P.M.

5. The sprinkler system did not function during the fire. It was later discovered that the key to the gate valve had been removed from the place it was usually kept. The morning after the fire it was found on the loading ramp. It is neither shown nor claimed that any person having connection with plaintiff had anything to do with removal of the key from its accustomed place, or with the shutting off of water supply from the system, if it was shut off, or had any knowledge thereof.

The defendant rests its claim for summary judgment, as a matter of law, solely upon the admitted fact that for the brief period in February 1958, many months before the fire, plaintiff had temporarily turned off the water at the outside gate valve for the purpose hereinabove stated without giving immediate notice thereof to the Kentucky Inspection Bureau. There is no showing or claim that such action had any relation to the opening of sprinkler heads or was on account of a break or leakage in the system.

I am of the opinion that merely turning off of the water for the purpose shown by the record, followed by promptly restoring its complete working order, did not constitute "change" in the system or in the water supply therefor, within the meaning of the endorsement upon which defendant relies. Cummer Lumber Company v. Associated Manufacturers' Mutual Fire Insurance Corporation of New York, 1901, 67 App.Div. 151, 73 N.Y.S. 668, affirmed 1903, 173 N.Y. 633, 66 N.E. 1106.

It seems quite clear that the endorsement upon the policy contemplates that the system might temporarily get out of working order and it expressly provides for this contingency by requiring the insured to use due diligence to maintain it in complete working order. It requires notice to the Kentucky Inspection Bureau only under circumstances which involved a "change" in the system or the water supply or "in case of break,

leakage, or the opening of sprinkler heads." No notice whatever is required by the contract for mere maintenance of the system in working order. The action of the plaintiff in February, 1958, seems to have been nothing more than the exercise of due diligence by the insured to maintain the system and did not constitute a violation of the provisions of the policy endorsement upon which defendant relies.

For the reasons indicated, the motion for summary judgment should be and is denied.

Let an order be entered in conformity herewith.