INTERNATIONAL FUEL AND IRON CORPORATION, Appellant, *v.* DONNER STEEL COMPANY, INC., Respondent.

Corporations — contract — action for breach — defense that plaintiff had failed to procure certificate authorizing it to do business within State prior to making of contract — policy of State as to foreign corporation — section 110 of Stock Corporation Law may not be construed literally — to come within its provisions foreign corporation must carry on business with some continuity of act and purpose — single transaction not sufficient to bring contract within meaning and purpose of statute.

1. The policy of this State, as manifested in its laws, is not to impose any unconscionable restrictions upon the transactions of foreign corporations here.

2. Section 110 of the Stock Corporation Law (Cons. Laws, ch. 59) cannot be taken literally. A foreign corporation may transact some kinds of business within the State without procuring a certificate or submitting to control. If its business be interstate, it is beyond State interference. To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and

purpose. Such an application of this statute to the facts as may amount to an unlawful interference with interstate commerce must be avoided and the corporation must be doing business in the State *at the time* of making the contract, or before procuring the certificate. This section does not apply to a corporation which is not doing business, as these words are interpreted, prior to its procuring the certificate.

3. The plaintiff, a foreign corporation, has sued the defendant for breach of contract and so far has been defeated for failure to procure the certificate mentioned in this section prior to the making of the contract. The only transaction which plaintiff had in the State of New York prior to procuring its certificate to do business was this one individual and single transaction with the defendant and its purchase and delivery of some steel scrap under this one contract. Within thirty days after its creation it obtained the necessary certificate from the Secretary of State authorizing it to do business here. The office in the State of New York maintained by a foreign corporation, must be one through which its business is being done. There is no evidence showing that fact. At the time the contract was made the plaintiff was not doing business within the State of New York as a continuous act. After obtaining permission to do business in this State, the parties reformed their contract and thereafter acted upon and under the contract as thus modified. It is the contract as thus modified, and not the original contract, which is sued upon. Under these circumstances this contract did not come within the meaning and purpose of the statute.

*International Fuel & Iron Corp.* v. *Donner Steel Co.*, 214 App. Div. 810, reversed.

(Argued January 13, 1926; decided March 4, 1926.)

APPEAL, by permission, from a judgment, entered November 23, 1925, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment in favor of defendant upon the nonsuit at a Trial Term.

*Adelbert Moot* and *W. V. Moot* for appellant. After July 31, 1920, when the plaintiff, appellant, had obtained

**226** Inter. Fuel & Iron Corp. *v.* Donner Steel Co.

[242 N. Y. 224]                    Points of counsel.                    [Mar.,

authority to do business in New York State, the letters
and telegrams exchanged between the parties during
September and October modifying the original contract
by providing for a flat increase of one dollar and forty
cents per ton in price instead of adding increased freight
on each particular car, and extending the time of per-
formance of the contract, constituted the making of a
new contract between the parties so as to authorize the
courts of this State to pass upon the merits of this action.
(*Clark* v. *Dales,* 20 Barb. 42; *Imperator Realty Co.* v. *Tull,*
228 N. Y. 447; *Turner Construction Co.* v. *Union Terminal
Co.,* 229 Fed. Rep. 702; *Williams* v. *Morris,* 95 U. S. 444.)
The plaintiff was not doing business in New York State
at the time the original contract was made in July, 1920.
(*Penn Collieries Co.* v. *McKeever,* 183 N. Y. 98; *Odell* v.
*City of N. Y.,* 206 App. Div. 68; 238 N. Y. 623; *Hovey* v.
*De Long Hook & Eye Co.,* 211 N. Y. 420; *People ex rel.
Manila El. R. R. & L. Co.* v. *Knapp.* 229 N. Y. 502;
*Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *Holzer* v.
*Dodge Brothers,* 233 N. Y. 216; *Provident Savings Assn.* v.
*Kentucky,* 239 U. S. 103.)   The original contract provid-
ing for the sale of steel scrap by the plaintiff to the
defendant, and, therefore, permitting the plaintiff to
purchase in foreign jurisdictions and ship in interstate
commerce without forfeiting its right to sue in the courts
of this State, did not come within the prohibition of the
statute by reason of the fact that the plaintiff purchased
part of the steel scrap with which to fill this contract
from domestic corporations instead of foreign corpora-
tions, the domestic corporations in turn purchasing the
larger part of their requirements in foreign States.
(*Angldile Computing Scale Co.* v. *Gladstone,* 164 App. Div.
370; *System Co.* v. *Advertisers' Cyclopedic Co.,* 121 N. Y.
Supp. 611; *Allgeyer* v. *La.,* 165 U. S. 578; *Prov. S. Assn.*
v. *Ky.,* 239 U. S. 103; *People* v. *Hawkins,* 157 N. Y. 1;
*Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *Matter of
Int. Ry.* v. *P. S. Comm.,* 226 N. Y. 482; *Helme* v. *Buckelow,*

Inter. Fuel & Iron Corp. *v.* Donner Steel Co.  **227**

1926.]  Points of counsel.  · [242 N. Y. 224]

229 N. Y. 370; *Holzer* v. *Dodge Bros.*, 233 N. Y. 216; *Chipman, Ltd.,* v. *Jeffry Co.*, 251 U. S. 379.)

*Lyman M. Bass* and *Daniel J. Kenefick, Jr.*, for respondent. The plaintiff, a foreign stock corporation, was doing business in this State and cannot maintain an action in the courts of this State upon a contract made herein without proving that prior to the making of the said contract it had secured from the Secretary of State the certificate required by section 15 of the General Corporation Law (now section 110 of the Stock Corporation Law). (*Lewis Publishing Co.* v. *Lenz*, 86 App. Div. 451; *Welsbach Co.* v. *Norwich G. & El. Co.*, 96 App. Div. 54; *South Amboy T. Cotta Co.* v. *Poerschke*, 45 Misc. Rep. 358; *Wood & Selick* v. *Ball*, 190 N. Y. 217; *Ac-Tin-O-Lyte Roofing Co.* v. *Werner*, 209 App. Div. 742; *American Can Co.* v. *Grassi Contracting Co.*, 102 Misc. Rep. 230; *Manufacturing Co.* v. *Blitz*, 131 App. Div. 17; *Pittsburgh Plate Glass Co.* v. *Ravitch*, 58 Misc. Rep. 191; *Warner Instrument Co.* v. *Sweet*, 65 Misc. Rep. 56; *East Coast Oil Co.* v. *Hollins*, 183 App. Div. 67.) The claim of appellant that the contract was modified " as to a temporary suspension of shipments " on October fourth, so as to take this case out from under the provisions of section 15 of the General Corporation Law is without avail. (*Thomson* v. *Poor*, 147 N. Y. 402; *Imperator Realty Co.* v. *Tull*, 228 N. Y. 447; *Holden* v. *Efficient Craftsman Corp.*, 234 N. Y. 437; *Bridges & Co.* v. *Barry*, 237 N. Y. 281.) The fact that the parties acted under and carried out the contract made on July 13, 1920, will not take this case from under the provisions of section 15 of the General Corporation Law simply because part of the performance of the contract took place after July 31, 1920, on which date plaintiff for the first time secured authority to do business in this State. (*Lupton's Sons Company* v. *Automobile Club of America*, 225 U. S. 489; *Wood* v. *Ball*, 190 N. Y. 217.) The transaction was not one of interstate commerce and was, therefore, sub-

ject to State regulation. ( *Kansas City Structural Steel Co. v. State of Arkansas,* U. S. Sup. Ct. Nov. 16, 1925; *Interstate Amusement Company* v. *Albert,* 239 U. S. 560.)

CRANE, J. Section 110 of article II of the Stock Corporation Law (Cons. Laws, ch. 59), formerly section 15 of the General Corporation Law, reads as follows:

" Certificate of authority; change of name. 1. No foreign stock corporation other than a moneyed corporation shall do business in this State without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this State and that the business of the corporation to be carried on in this State is such as may be lawfully carried on by a corporation created under the laws of this State for such or similar business, or if more than one kind of business, by two or more corporations so incorporated for such kinds of business respectively. The secretary of state shall issue such certificate to any such corporation so complying. No such foreign corporation doing business in this State shall maintain any action in this State upon any contract made by it in this State, unless prior to the making of such contract it shall have procured such certificate. This prohibition shall also apply to any assignee of such foreign corporation and to any person claiming under such assignee or such foreign corporation or under either of them."

The plaintiff, a foreign corporation, has sued the defendant for breach of contract and so far has been defeated for failure to procure the certificate mentioned in this section prior to the making of the contract. The question for us to determine is whether it appears from the evidence that the plaintiff was doing business in this State, within the meaning and purpose of this section so as to prevent it from maintaining the action. The contract is conceded; so is its validity. The defendant's

breach and the consequent damage to the plaintiff are sufficiently proven.   The one and only question is whether the statute bars the action, or, in other words, whether the facts bring the plaintiff within the prohibition of the act.

Before considering the facts, it may be well to repeat some of the legal propositions which attach to this section, and govern the activities within this State of foreign corporations.

That the section cannot be taken literally is quite evident.   A foreign corporation may transact some kinds of business within the State without procuring a certificate or submitting to control.   If its business be interstate, it is beyond State interference.   " A corporation of one State may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause." (*Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 291.)

A foreign corporation may send its agents into this State to make contracts for the purchase or sale of goods without falling within the inhibitions of our statute. (*Angldile Computing Scale Co.* v. *Gladstone,* 164 App. Div. 370, p. 372.)   In this case it was said: " A manufacturing corporation in Indiana has a right to send its agent into the State of New York, there to make contracts for the sale and delivery of its goods, and this right to make such contracts carries with it, by necessary implication, the right to enforce such contracts in the courts of this State, in the absence of lawful limitations upon that right."

Again, we must bear in mind that the mere maintenance of an office for a corporation within another State is not in and of itself without other proof evidence that it is doing business within that State.   The office may be maintained merely as a place of accounting, for the meeting of directors and officers, a station point for its

superintendents or salesmen, or for mere show rooms. (*People ex rel. Tower Co.* v. *Wells*, 182 N. Y. 553, affg. 98 App. Div. 82; *Hovey* v. *De Long Hook & Eye Co.*, 211 N. Y. 420, 425; *People ex rel. Manila El. R. R. & L. Co.* v. *Knapp*, 229 N. Y. 502, 510.)

To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose. (*Penn Collieries Co.* v. *McKeever*, 183 N. Y. 98.) Judge Gray, writing for this court, said of these statutory provisions: " I think that they should be construed, both upon the fair import of their language, as well as upon a just consideration of the public policy and of the State interests to be promoted, as, simply, preventing foreign corporations from entering the State by agencies and there engaging in the general prosecution of their ordinary business, without first complying with certain requirements of a reasonable nature and evidencing their compliance by obtaining a certificate to the effect.

" The policy of our State, as manifested in its laws, is not to impose any unconscionable restrictions upon the transactions of foreign corporations here. * * * To bring into operation the statutory provision, the facts should show more than a solitary, if not accidental, transaction as was the one before us. They should establish that the corporation was conducting a continuous business. To be ' doing business in this State ' implies corporate continuity of conduct in that respect; such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances, which attest the corporate intent to avail itself of the privilege to carry on a business." (pp. 101, 102, 103.)

To the same effect is the case of *Cooper Mfg. Co.* v. *Ferguson* (113 U. S. 727, 734) where it was said: " The

prohibition against doing any business cannot, therefore, be literally interpreted. * * * The making in Colorado of the one contract sued on in this case, by which one party agreed to build and to deliver in Ohio certain machinery and the other party to pay for it, did not constitute a carrying on of business in Colorado."

In *Angldile Computing Scale Co.* v. *Gladstone (supra)* it was said: " The ' doing business ' referred to in the statute is the exercising of its corporate franchises; the maintaining of a place of business within the State in the sense that the corporations organized and doing business under the laws of this State maintain such places of business."

One other principle we must mention. As the foreign corporation has the right without interference by the State to conduct interstate business, which would doubtlessly include selling goods in this State (*Hovey* v. *De Long Hook & Eye Co., supra*), we must avoid such an application of this statute to the facts as may amount to an unlawful interference with interstate commerce. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 267.) A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score. ( *U. S.* v. *Jin Fuey Moy*, 241 U. S. 394.)

And finally, I would like to call attention to an interpretation of this section of the Stock Corporation Law, which I think has either been overlooked by the courts below, or else not sufficiently emphasized. Taken literally, no corporation doing business in this State shall maintain any action upon any contract unless it procured the certificate prior to the making of the contract. This may be read so as to eliminate altogether the importance of the time when the corporation was doing the business in the State. That is, if a contract be made before the certificate be obtained, but the corporation do no other business within the State until after the procuring of the

certificate, this section, taken literally, would prevent any action on such a contract. Here would be the case of a corporation doing business in the State, and a contract made before procuring the certificate. But such is not the law. The corporation must be doing business in the State *at the time* of making the contract, or before procuring the certificate. This section does not apply to a corporation which is not doing business, as these words are interpreted, prior to its procuring the certificate. (*Odell* v. *City of New York*, 206 App. Div. 68, p. 72; affd., 238 N. Y. 623.) In that case the contract was signed on April 18, 1907. The certificate authorizing the McNally Company, the contractor, to do business in this State was issued September 9, 1907. It appeared that the McNally Company never did business in this State before the signing of the contract; it had no bank account, and did not maintain any office in the State. The court said: " The McNally Company was not doing business in this State when the contract in question was made and, therefore, had the right to sue thereon."

I have referred to these cardinal principles which must be read into this provision of the Stock Corporation Law before referring to the facts in order that it may clearly appear as I now detail those facts that this plaintiff is not within the letter or the spirit of the law, and that its transactions come within many of these decisions to which I have referred.

Now for the facts. The plaintiff is a foreign corporation incorporated under the laws of the State of Delaware on the 28th day of June, 1920, for the purpose, among other things, of buying, selling and dealing in iron and steel. Its principal office was in the city of Philadelphia. The defendant is a New York corporation having its principal place of business in Buffalo, New York, engaged at all the times here mentioned in buying steel. On the 13th day of July, 1920, these parties entered into a contract in writing, whereby the plaintiff sold to the

defendant 15,000 tons of steel scrap to be shipped between July 1st and November 1st, 1920, and delivered to the defendant in Buffalo, New York. The price was to be $25.50 per gross ton, f. o. b. cars " your plant, Buffalo, N. Y." The contract was mailed by the plaintiff to the defendant, signed and mailed back. A previous contract of like tenor had been brought by an employee from Philadelphia to Buffalo. Outside of the making of this contract, it does not appear that the plaintiff did any other business within the State of New York. In fact, the contract was made almost at its own creation, or a few days after its incorporation. The plaintiff was a dealer in scrap steel. It did not manufacture it. The scrap steel was purchased in the open market, or from manufacturers. It could be purchased by the plaintiff in and shipped from any State into New York. On its face this was not an intrastate contract, and might be the cause of interstate shipments. In fact, subsequent correspondence between the parties shows that shipping points were from Michigan and the West. At least part of the material was to come from without the State.

On July 31, 1920, the plaintiff obtained from the Secretary of State a certificate authorizing it to do business in New York. Prior to that time the only thing which the plaintiff did was to make this contract with the Donner Steel Company, Inc., purchase and deliver some of the steel scrap. Here was a single, individual transaction. There is nothing to show that before July 31, 1920, the plaintiff was carrying on business within the State of New York by any continuity of action, by the maintenance here of any office for the transaction of its business, or by doing any business with the exception of this one contract and a few deliveries thereunder.

The defendant says that the plaintiff maintained an office in New York. I do not so read the evidence. Apparently, the plaintiff was organized to take over other

corporations. One of these was the Industrial Coal & Coke Corporation of New York. Whether this was a live corporation doing business does not appear. All the evidence we have on this point is the following, regarding a Mr. Lyons, who was a director of the plaintiff. In reading this evidence, remember that the plaintiff was incorporated on June 28, 1920, and the contract with the defendant was made two weeks thereafter — July 13, 1920; and a certificate to do business in New York procured one month thereafter — July 31, 1920. Here is what is said about a New York office:

" Q. He (Mr. Lyons) was in charge of the New York office? A. Yes, and also he was vice-president."

" Q. Did he have anything to do with this contract that you know of? A. Not that I know of."

" Q. He was in charge of the New York office, as I understand, since your corporation was formed? A. Yes."

" Q. Back the 1st of July, 1920? A. At the time this contract was made Mr. Lyons was in Europe."

" Q. But who was in charge of your New York office the 1st of July, 1920? A. No one."

" Q. There were five people down there, were there not? A. Yes, Mr. Lyons was President, I think — it was his company, the Industrial Coal & Coke Corpora· tion of New York, which was one of the companies which was taken in on the formation of the International Fuel & Iron Corporation, and he had an organization of some sort there of the Industrial Coal & Coke Corporation which, later on, automatically came over to the International Fuel & Iron Corporation when it was taken over. But Mr. Lyons was at that time in Europe and there was really no one functioning as the head of the New York office."

At what time the Industrial Coal & Coke Corporation was taken over by the plaintiff does not appear. The office was the office of the Coal & Coke Company. What kind of an office it was, whether it was doing any business,

who the five persons were in the office, nowhere appears. The plaintiff had no office in New York State unless this Coal & Coke office be considered one. But there is not the least evidence to show that this office did anything for the plaintiff, or in fact was doing any business at all. As the above cases indicate, the office in the State of New York maintained by a foreign corporation, must be one through which its business is being done, not one for the purposes stated in those cases.

This outline of the evidence brings the case within nearly all of the authorities above cited.

At the time the contract was made, July 13, 1920, the plaintiff was not doing business within the State of New York.

The contract was not necessarily an intrastate contract, but one which the plaintiff could and in part did perform by interstate shipments. We should not apply this statute to shipments or contracts which would make the application and the law unconstitutional.

The only transaction which this plaintiff had in the State of New York prior to procuring its certificate to do business was this one individual and single transaction with the defendant and its purchase and delivery of some steel scrap under this one contract.

It does not appear that prior to July 31, 1920, or within one month after its creation, the plaintiff was carrying on or conducting its business within the State of New York, as a continuous act, with the intent and purpose of doing business here before obtaining its certificate. On the contrary, the facts indicate that its intention was just the reverse. Within thirty days after its creation it obtained the necessary certificate from the Secretary of State authorizing it to do business here. To hold that a contract made within those thirty days, and before it was doing any business in the State, could not be enforced, because a few deliveries made under that one contract may have occurred before procuring the

certificate, would be contrary to the spirit, purpose and meaning of this provision of the Stock Corporation Law.

The contract as made July 13, 1920, was modified in the following August, after the plaintiff had procured its certificate authorizing it to do business in New York State. The price per gross ton of the steel was raised from $25.50 per ton to $26.90. This change was made in writing, agreed to by the parties. The increase in price was to meet the increase in freight rates taking effect August 26th. In the correspondence between the parties prior to the adoption of this change the plaintiff stated that there would be an increase in the rate for scrap purchased for the defendant in New England, to and from Detroit, and from numerous other Michigan points. The contract was thereupon modified.

Therefore, after obtaining permission to do business in this State, the parties reformed their contract in a minor particular, it is true, but nevertheless, modified it, and thereafter acted upon and under the contract as thus modified. It is the contract as thus modified, and not the contract as it existed July 13, 1920, which is sued upon. Such a circumstance moved the Federal court in *Turner Construction Co.* v. *Union Terminal Co.* (229 Fed. Rep. 702, 704) to say regarding a Florida statute in some particulars like our own: " But after both the parties were free of any disability they could make a new contract and recognize the instrument already signed as embodying the terms of it."

I do not want to be understood as saying that if this modification were all that we had in a case otherwise within the statute, it would be sufficient to remove the prohibition thereof. But I do claim that under all of the facts and circumstances of this case, it is a matter to be taken into consideration in determining whether this contract as a whole was actually made while the plaintiff was doing business within the State of New York, and before receiving permission. It is a circum-

stance which bears upon the plaintiff's intention to do business before procuring such a certificate and the continuity of that business, if there was any. As stated, there was this one contract executed two weeks before the plaintiff could procure permission to do business in this State, recognized, acted upon and modified in writing after such permission was obtained. Under these circumstances this contract did not come within the meaning and purpose of the statute.

For the reasons here expressed, the judgments of the court below should be reversed and a new trial granted, costs to abide the event.

HISCOCK, Ch. J., CARDOZO and LEHMAN, JJ., concur; POUND, McLAUGHLIN and ANDREWS, JJ., dissent.

Judgments reversed, etc.