**MANHATTAN FUEL COMPANY, INC., Plaintiff,**

v.

**NEW ENGLAND PETROLEUM CORPORATION, Defendant.**

**No. 71 Civ. 793 (KTD).**

United States District Court, S. D. New York.

Sept. 13, 1976.

Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiff; A. Edward Grashof, Arnold S. Anderson, New York City, of counsel.

Eaton, Van Winkle & Greenspoon, New York City, for defendant; Samuel N. Greenspoon, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This action is to recover brokerage commissions. Plaintiff alleges that in May 1967, defendant, a seller of fuel oil, agreed to pay such commissions to John S. Routh, Jr. ("Routh") if Routh procured Niagara Mohawk Power Corporation ("Niagara Mohawk") as a fuel oil customer for defendant. It further asserts that Routh's rights under the agreement were assigned in December 1967, to Manhattan Coal Company, who, in February 1969, assigned those rights to plaintiff.[1] It is conceded that in July 1970, defendant entered into two long-term fuel oil supply contracts with Niagara Mohawk, covering the latter's Albany and Oswego plants. Defendant, however, disputes Routh's performance in securing such contracts. It contends that the Niagara Mohawk agreements were not obtained as a result of Routh's efforts and, alternatively, the agreement to pay Routh was contingent upon his securing not only oil supply arrangements but also the right to construct, finance and operate an Albany Oil storage facility. It further asserts that, in any event, the brokerage agreement related only to Albany, and not Oswego, deliveries.

At two prior stages of this action plaintiff moved for summary judgment. On April 24, 1972, Judge Ryan denied the motion without prejudice, while recusing himself from a consideration of the case. On resubmission to Judge Frankel, plaintiff's motion was again denied by order dated June 14, 1972. The case was then assigned to me.

1. Both Manhattan Coal Company and plaintiff, Manhattan Fuel Company, are wholly owned and controlled by Routh.

At a pretrial conference held on December 7, 1973, the parties indicated their willingness to have the case submitted for determination on the basis of stipulated facts, as well as the depositions and exhibits in the record, without the necessity of a trial. The parties could not, however, arrive at a stipulation. Plaintiff thereafter submitted a statement of the facts for consideration, to which defendant did not assent. Plaintiff's submission of its statement, accompanied by its supporting memorandum, will be considered as a renewal of its motion for summary judgment. Defendant has opposed this motion and has cross-moved to dismiss the complaint. Additionally, plaintiff has moved to amend the complaint so as to include a cause of action *in quantum meruit,* and to supplement the record with respect to subsequent oil deliveries for which it seeks commissions.

After reviewing the record, I must agree with Judge Frankel, who concluded that the presence of factual issues precluded a grant of summary judgment. As he pointed out, a trial is necessary to determine whether the financing and construction of a storage facility was a condition of plaintiff's entitlement to commissions or a mere sales promotion device actually disadvantageous to defendant. Likewise, the questions relating to the scope of the agreement and to Routh's success in securing Niagara Mohawk as defendant's customer are issues of fact for trial.

Since the jurisdiction of this Court is based on diversity of citizenship, under *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law of New York must be applied in determining the grounds raised by defendant in support of its motion to dismiss.

■ Defendant initially asserts that plaintiff's suit is barred by the Statute of Frauds[2] in the absence of a writing, signed by defendant, which evidences the agreement in question. New York law permits ". . . signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction(,)" to evidence an integrated contract sufficient to satisfy the Statute, *Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953); and an exchange of letters may be so read. See *Bruce Realty Co. of Fla. v. Berger,* 327 F.Supp. 507, 511 (S.D.N.Y.1971). So long as the writings expressly or impliedly contain all the material terms of the agreement, the requirement of the Statute is met. *Donald Friedman & Co. v. Newman,* 255 N.Y. 340, 347, 174 N.E. 703 (1931).

An analysis of the record reveals that the agreement between the parties is evidenced by the exchange of letters between Routh and Richard Weinand, defendant's Executive Vice-President, dated July 27, 1967, July 31, 1967, August 3, 1967, December 6, 1968 and December 26, 1968. Even if Routh's replies of July 31 and December 6 were to be ignored, Weinand's letters alone indicate an agreement to retain Routh as a broker to obtain Niagara Nohawk's business for defendant, and to pay a commission of five cents per barrel of oil delivered to Niagara Mohawk for the term of the contract between buyer and seller so solicited.

■ Defendant urges that since, in its view, this correspondence relates to an agreement both to construct a storage facility and to supply fuel oil, it evidences a different agreement than that under which plaintiff claims commissions. In this manner, defendant seeks to equate the contractual ambiguity relating to whether the storage facility construction was an essential precondition of payment or a mere added

---

**2.** New York General Obligations Law § 5–701(1) provides:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

It is clear that this section applies to the contract in question. See *Martocci v. Greater New York Brewery, Inc.,* 301 N.Y. 57, 92 N.E.2d 887 (1950).

inducement to buy oil, with a separate agreement, and thus defeat plaintiff's suit. This interpretation must fail. The Statute of Frauds, which was designed to guard against fraudulent claims supported by perjured testimony, was never meant to be used as "a means of evading just obligations" based on contracts "fairly, and admittedly, made." *Morris Cohon & Co. v. Russell,* 23 N.Y.2d 569, 574, 297 N.Y.S.2d 947, 952, 245 N.E.2d 712, 715 (1969); 4 *Williston Contracts* § 567A (3d ed. 1963). It is readily apparent that an agreement between the parties, which identified buyer, seller and broker, and specified the subject matter of the brokerage, the commission payable, and the duration over which commissions were to be paid, was "admittedly made." The ambiguity in one of the terms can be resolved simply by parol evidence and will not defeat the sufficiency of the writing for the purposes of satisfying the Statute of Frauds. *Crabtree v. Elizabeth Arden Sales Corp., supra.*

Defendant additionally contends that New York Business Corporation Law § 1312,[3] which prohibits the maintenance of any action by an unauthorized foreign corporation doing business in New York unless and until it qualifies and pays the required fees and taxes, mandates dismissal. The operative language of the statute and the interpretation given it by the New York courts indicate that failure to so qualify is not a jurisdictional defect defeating the action, but that such a corporation (or its successor in interest) can, after commencing an action, obtain authority and thereafter maintain the lawsuit. *See, e. g., Hot Roll Mfg. Co. v. Cerrone Equipment Co.,* 38 A.D.2d 339, 329 N.Y.S.2d 466 (3d Dep't 1972); *Hooton Chocolate Co. v. Star Chocolate Novelties, Inc.,* 63 Misc.2d 482, 311 N.Y. S.2d 698 (Sup.Ct.Col.Co.1970). The proper inquiry, then, is whether plaintiff will be required to obtain authority and pay the taxes and fees before this action can continue. The answer lies in whether plaintiff or its assignor is, in fact, doing business in New York within the meaning of § 1312.[4]

To be doing business in this context the foreign corporate plaintiff must be shown by the defendant to have maintained and carried on a regular and continuous course of business conduct in New York. *Stafford-Higgins Inds. v. Gaytone Fabrics, Inc.,* 300 F.Supp. 65 (S.D.N.Y.1969); *Int'l Fuel & Iron Corp. v. Donner Steel Co.,* 242 N.Y. 224, 151 N.E. 214 (1929).

The activities relied on by defendant to show that plaintiff, Manhattan Fuel Company, or its assignor, Manhattan Coal Company, was doing business in New York are 1) the solicitation of the business of four separate New York coal purchasers on behalf of out-of-state coal producers and occasional related visits to the New York buyers, at various and separate occasions during the three years preceding this action; 2) in three of the four transactions, the passing of title from Manhattan Coal Company, who had taken title on receipt from the producers,[5] on delivery in New York;[6] 3)

---

**3.** New York Business Corporation Law § 1312 provides in pertinent part:

(a) A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this state without authority. This prohibition shall apply to any successor in interest of such foreign corporation.

(b) The failure of a foreign corporation to obtain authority to do business in this state shall not impair the validity of any contract or act of the foreign corporation . . .

**4.** It should be noted that any interstate aspects of the fuel oil business would necessarily circumscribe the applicability of N.Y.B.C.L. § 1312. See *Allenburg Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). However, I need not reach that issue since defendant has failed to show that plaintiff is, or that its assignor, Manhattan Coal Company, was, doing business in New York within the meaning of § 1312.

**5.** In three of these transactions, Manhattan Coal Company acted as broker; in the fourth, as principal. Dep. of Plaintiff, p. 307.

**6.** The largest buyer, Consolidated Edison, who accounted for the bulk of coal shipped in 1969,

the Niagara Mohawk deal which encompassed the purported solicitation of a New York buyer on behalf of a New York seller with three-quarters of the deliveries in New York; and 4) the total dollar volume of sales so solicited which approximated several million dollars. The record is barren, however, with respect to both the amount of commissions received by either Manhattan Coal Company or Manhattan Fuel Company on the aggregate of these sales, and the proportion of either company's business that such solicitations represented. It is undisputed that neither company maintains an office, telephone listing, building directory listing or mail drop in New York or has any employees, property, corporate meetings or agents within the state.

It seems that mere solicitation of in-state sales and delivery pursuant thereto do not constitute doing business within the meaning of § 1312. Moreover, in *Stafford-Higgins Inds. v. Gaytone Fabrics, Inc.,* supra, the court rejected the defendant's assertions that the plaintiff was doing business in New York as a result of merchandise orders placed with and accepted by the defendant in New York, delivery to the plaintiff's independent contractor in New York, maintenance by the plaintiff of an office and telephone listing in New York and the presence of five salesmen within the state.

Certainly, the activities relied on in the instant case are closely akin to solicitation and delivery and, in any event, do not exceed those asserted and rejected in *Stafford-Higgins.* Defendant has failed to demonstrate that aggregate of intrastate contacts which necessitate qualification under New York law for the continued maintenance of this action.

Since I have concluded that defendant's motion to dismiss must be denied, I must now turn to plaintiff's motion to amend the complaint. Plaintiff seeks to include a separate claim based on *quantum meruit* for services rendered; to make certain factual changes in the allegations to substitute Routh for Manhattan Coal Company as the contracting party, and to reflect the chain of assignments from Routh to plaintiff (Proposed Amended Complaint, Paragraphs 8–14); and to update the record with respect to oil deliveries by defendant to Niagara Mohawk through December 1975. Defendant has opposed this motion on several grounds, asserting delay, an inability of plaintiff to recover, on the same facts, both on the contract claim and in quantum meruit, and an attempt by plaintiff to circumvent the applicability of N.Y.B.C.L. § 1312.

Rule 15(a), F.R.Civ.P., which states that leave to amend "shall be freely given when justice so requires," has been liberally construed in the absence of prejudice. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Although two years have passed since the completion of discovery, defendants have not alleged any injury as a result of this delay in requesting an amendment. Therefore, delay, in and of itself, may not defeat the granting of this motion.

With respect to the *quantum meruit* claim, defendant's contention, however accurate with regard to recovery, is incorrect with regard to pleading. It is a basic principle of pleading that a party may properly allege alternative or even inconsistent claims or legal theories. Rules 8(a), (c), F.R.Civ.P., 2A *Moore's Federal Practice* § 8.32 (2d ed. 1975). The *quantum meruit* claim is based on the same facts, transactions and occurrences underlying the contract claim; it occasions neither surprise nor the need for additional discovery. Since defendant has alleged no injury or prejudice as a result of allowing the addition of this claim, the motion as to this amendment is granted.

Defendant's opposition to plaintiff's proposed substitution of Routh for Manhattan Coal Company in certain of its allegations is mooted by my conclusion that N.Y.B.C.L. § 1312 is inapplicable in this case.[7] Defend-

---

took delivery in New Jersey. Dep. of Plaintiff, p. 321.

7. It should be noted, in any event, that had either plaintiff or his assignor been found to

ant has been apprised of this aspect of plaintiff's position since the taking of plaintiff's deposition in 1971. Such amendment merely conforms the allegations in the complaint to the assertions in plaintiff's deposition and briefs.

Plaintiff has requested that I enter an order supplementing the record to reflect subsequent deliveries to Niagara Mohawk which are set forth in a proposed amended stipulation. The stipulation has been previously submitted for defendant's consent which has been refused.

■ The plaintiff's request for me to amend the stipulation among the parties as to subsequent deliveries is denied. However, the proposed amended complaint contains an allegation reflecting such deliveries. Since a trial will be necessary, proof regarding this allegation can be presented at that time.

The motion for summary judgment and cross motion dismissal of the complaint are both denied. The motion to amend the complaint is granted.

The case is to be marked ready for immediate trial.

SO ORDERED.

have been doing business in New York, N.Y.B.C.L. § 1312 would have applied regardless of whether Routh as an individual, initiated the deal. N.Y.B.C.L. § 1312. For the purposes of this note, interstate aspects of the business, and the related constitutional considerations, are ignored.