(92 Misc. Rep. 260)

### BADISCHE LEDERWERKE v. CAPITELLI.

(Supreme Court, Trial Term, Fulton County. November, 1915.)

CORPORATIONS ☞642—FOREIGN CORPORATIONS—"DOING BUSINESS IN STATE."

> A foreign corporation is not "doing business in the state," for which General Corporation Law (Consol. Laws, c. 23) § 15, requires it to have a certificate, it having in the state no office and no capital invested, but having as a selling agent a commission merchant, under a contract terminable by either party on 60 days' notice, who sells goods consigned to him, and takes orders, subject to its approval, for other goods, receiving a commission and $10 a week, purchasers paying to a bank, which remits to the corporation, and the agent guaranteeing the payment of all his sales.
>
> [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. ☞642.
>
> For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

Action by the Badische Lederwerke, a corporation, against Vincent Capitelli. Findings for plaintiff.

William A. MacDonald, of Gloversville, for plaintiff.
Strauss & Singer, of New York City, for defendant.

WHITMYER, J. Plaintiff is a foreign corporation, incorporated under the laws of the state of Baden, Germany, with its home office at Karlsruhe, in said state, and has brought this action against defendant to recover the sum of $159.50, with interest from September 17, 1913, and the further sum of $267.17, with interest from October 3, 1913, for skins sold and delivered by it to defendant. It is conceded that the amount claimed was the agreed price of the goods and that the same has not been paid, but it is claimed that plaintiff was doing business in the state at the times of the sales, without a certificate permitting it so to do, in violation of section 15 of the General Corporation Law, and that the action, therefore, cannot be maintained.

Plaintiff did not have such a certificate, and the sole question is whether or not it was doing business here, at said times, within the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

meaning of the statute. The sales were made in the city of Glovers-ville, N. Y., by William Maier, who conducts a commission business there. He was plaintiff's selling agent, under a written agreement which became effective March 31, 1913, and could be terminated by either party on 60 days' notice. It continued until April 1, 1914. It provided that sales were to be made at the prices fixed by plaintiff, and that plaintiff should pay cables, duties, transportation, insurance, freight, and cartage to Maier's office. It provided, also, that Maier, on making a sale, should make an invoice, in triplicate, in the name of plain-tiff, and payable to the People's Bank at Johnstown, N. Y., one for the purchaser, one for said bank, and one for plaintiff; that he should make weekly reports of his sales, monthly inventories of goods on hand, keep correct books of account, keep goods insured in plaintiff's name, pay all expenses incurred after delivery, and guaranty the payment of all sales; and, for his services, he was to receive a com-mission of 3 per cent. on sales from stock and a salary of $10 per week for sales on commission. He sold partly on commission and partly from stock consigned. The consignments were in such an amount that he had on hand about 1,000 dozen skins at all times. These were for the benefit of purchasers who desired speedy delivery. Orders for commission sales were sent to Karlsruhe, and, if approved, the goods were sent directly from the factory to the purchaser. No ap-proval was necessary in cases of sales from stock on hand. Invoices were directed to the debtor, and ran "To People's Bank, Dr., for mer-chandise sold by William Maier, for account of Badische Lederwerke, Karlsruhe, Germany." They contained a request that checks be made payable to the bank. Purchasers made their payments accordingly, the bank received them, placed them to the credit of plaintiff, and trans-mitted them to it from time to time, and Maier had no authority to draw against the same, except for certain small incidental expenses. He sold for himself and for others at the same time, and he alone paid the rent of the building in which he conducted his business. Plaintiff did not pay any part of it, and did not have an office or place of business in the state. That was the situation, substantially, at the times of the sales to defendant.

"To be 'doing business in this state' implies corporate continuity of conduct in that respect, such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances, which attest the corporate intent to avail itself of the privilege to carry on a business." Penn Collieries Co. v. McKeever, 183 N. Y. 103, 75 N. E. 936, 2 L. R. A. (N. S.) 127.

It should appear that the corporation intended to establish a con-tinuous business in the state, and not one of a temporary character. People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 165, 51 N. E. 1043; Brown Seed Co. v. Richardson, 53 Misc. Rep. 518, 103 N. Y. Supp. 243. The sales on commission did not constitute doing business within the meaning of the statute. Tallapoosa Lumber Co. v. Holbert, 5 App. Div. 559, 39 N. Y. Supp. 432; People ex rel. Wash-ington Mills Co. v. Roberts, 8 App. Div. 201, 40 N. Y. Supp. 417, affirmed 151 N. Y. 619, 45 N. E. 1134. And the same is true of the

sales from stock. People ex rel. Cotton Oil Co. v. Roberts, 25 App. Div. 13, 48 N. Y. Supp. 1028; Brookford Mills, Inc., v. Baldwin, 154 App. Div. 553, 139 N. Y. Supp. 195; Bertha Zinc & Mineral Co. v. Clute, 7 Misc. Rep. 123, 27 N. Y. Supp. 342; Acorn Brass Mfg. Co. v. Rutenberg, 147 App. Div. 533, 132 N. Y. Supp. 600; Brown Seed Co. v. Richardson, supra. Plaintiff's factory is in Germany. It had no office for the transaction of business in this state and had no capital invested here. It consigned to Maier, who conducted a commission business in the city of Gloversville. He was plaintiff's selling agent, under an agreement which could be terminated by either party on 60 days' notice. Purchasers were required to pay directly to the bank, which remitted to plaintiff; but Maier was required to guaranty the payment of all of his sales. He sold goods of the same kind for himself and for others during the time that he was selling for plaintiff, and he alone paid the rent of the place where he conducted his business. It seems to me that he was doing the business, and not plaintiff.