LEBANON MILL COMPANY, INC., Plaintiff, *v.* PHILIP KUHN, Doing Business as MAJESTIC KNITTING MILLS, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 20, 1932.

*I. Gainsburg* [*Seymour B. Liebman* of counsel], for the plaintiff.

*Herbert O. Burden*, for the defendant.

GENUNG, J. The pleadings in this case are oral. Plaintiff sues for goods sold and delivered. Defendant pleads a general denial, and a defense and counterclaim based upon an alleged breach of warranty.

On the merits of the case plaintiff is entitled to recover.

Defendant has moved to dismiss the complaint, however, upon the ground, among others, that plaintiff, a foreign corporation, is debarred from suing in the courts of this State because of its non-compliance with the provisions of section 218 of the General Corporation Law.

Plaintiff is a Rhode Island corporation engaged in the manufacture and sale of textile fabrics. Its plant and offices are located in Pawtucket, R. I. Potter Textile Co., Inc. (which, apparently, is a domestic corporation), is its exclusive selling agent in New York. Emil Potter is an officer both of plaintiff and of Potter Textile Co., Inc.

Potter Textile Co., Inc., maintains an office at 72–74 Madison avenue, New York city. Plaintiff's name appears on the directory board of the building at that address. There is no proof that plaintiff keeps a stock of goods at, or makes deliveries from, the premises at 72–74 Madison avenue, New York city. Nor is there proof that plaintiff keeps its corporate records or its books of account at said address.

Potter Textile Co., Inc., solicited the orders in question from the defendant in New York city. The orders were forwarded to Pawtucket and shipment was made therefrom by the plaintiff directly to the defendant in New York city. The invoices were mailed from the Madison avenue address. The invoices bore the name of the plaintiff and the Madison avenue address.

It was established that prior to the transactions involved in this suit a few similar sales had been made by plaintiff to the defendant and that the mechanics of sale, delivery, billing and payment were identical with those employed in the sales presently under consideration. There was no proof of sales by plaintiff to any one else in New York.

What constitutes " doing business " within this State, as applied to a foreign corporation, is a frequently recurring question. The cases are in apparent agreement that neither public policy nor the statute proscribes all economic endeavor of a foreign corporation in this State. Quite aside from fundamental constitutional considerations (Cf. *Furst* v. *Brewster*, 282 U. S. 493), such a restriction would run counter to the self-interest of this predominantly mercantile community, the commerce of which is largely interstate and international. " The policy of our state, as manifested in its laws, is not to impose unconscionable restrictions upon the transactions of foreign corporations here." (*Penn Collieries* v. *McKeever*, 183 N. Y. 98, 102.)

*Some* business may be done here by a foreign corporation. But at what point does the proscription of section 218 of the General Corporation Law, within the condition therein stated, become operative? Tests have at times been formulated by our courts as an aid to this inquiry. Though necessarily vague and inconclusive, they indicate criteria of appraisal of corporate activity, which no reflective decision can ignore. We are told that within the ambit of a transient, occasional, non-continuous sphere of activity, a foreign corporation may prosecute its corporate functions here, without incurring the disability imposed by section 218 of the General Corporation Law. Beyond that sphere immunity ceases, and compliance with the statute becomes mandatory as a condition to suit in the courts of this State. If the corporate activity of a foreign corporation is attended with an appreciable measure of volume, continuity and regularity, it is forbidden to sue here upon a contract here made if the contract be not preceded by a local authorization to transact business in this State.

The problem is essentially one of fact. There are no fixed standards of appraisal. The tokens of a forbidden activity must be found in the nature of the particular foreign corporate enterprise, and what is done in this State in the furtherance thereof.

" A foreign corporation may send its agents into this State to make contracts for the purchase or sale of goods without falling within the inhibitions of our statute." (*International Fuel & I. Corp.* v. *Donner S. Co.*, 242 N. Y. 224, 229.) It may, with like immunity, provide its agents with a meeting place or headquarters. (Id.) It may appoint a local selling agent; and its name may appear on the door of the place of business occupied by the local selling agent. (*Schwarz* v. *Sargent*, 197 N. Y. Supp. 216.) It may include its name in the telephone directory as of the address of its selling agent. (*Rosenblatt* v. *Bridgeport Metal Goods Mfg. Co.*, 105 Misc. 92.) It may ship goods to commission merchants to be sold on consignment. (*Brookford Mills, Inc.*, v. *Baldwin*, 154 App. Div-

553; *Lederwerke* v. *Capitelli*, 92 Misc. 260.) None of these activities, *per se*, constitute doing business in this State, within the meaning of section 218 of the General Corporation Law.

Evidence of a single sale (*New York Architectural Terra Cotta Co.* v. *Williams*, 102 App. Div. 1), or two sales (*Ozark Cooperage Co., Inc.*, v. *Quaker City Cooperage Co.*, 112 id. 62), or even a " series of sales " (*Angldile Computing Scale Co.* v. *Gladstone*, 164 id. 370, 375) does not, *per se*, warrant a finding that a foreign corporation is " doing business " here. Such activity falls within the permissible latitude of the occasional, non-continuous transaction of business.

Of course, the local activity of a foreign sales corporation may be so extensive and the sales so numerous, that one need hardly go beyond a tabulation of the local sales to conclude that the foreign corporation has established a branch of its business in this State, the apparent permanence of which is attested by both the volume and the continuity of its purely intrastate activities in New York. (Cf. *Int. Text Book Co.* v. *Connelly*, 67 Misc. 49, in which case, however, the contract was shown to have been made outside of this State.) Data less specific has not infrequently furnished the basis for a like conclusion. The inquiry in each instance is whether continuity of activity and the apparent permanence of the local business situs is fairly inferable from the evidence in the case. The indicia of corporate activity vary with the particular case. In the final result they suffice if they demonstrate that the particular transaction was but an incident of an established process — a definite continuum — of local corporate activity. (*Pittsburgh Elec. Co.* v. *Rosenbaum*, 102 Misc. 520.)

The evidence in this case fell short of such proof. There was proof merely of a few previous sales to *this* defendant. There was no proof of similar sales to others in New York. A foreign corporation, suing here, on a contract made in this State, must show compliance with the provisions of section 218 of the General Corporation Law, only when it is conceded or otherwise established, that it is doing business in this State. (Cf. *Spiegel, May, Stern Co.* v. *Mitchell*, 125 Misc. 604.)

Under the circumstances, I preceive no determinative significance in the fact that the invoices and statements bore plaintiff's name as vendor and that they also bore the Madison avenue address.

Equally inconclusive is the fact that plaintiff maintained a bank account in New York in the absence of proof of a continuity of its corporate activity in New York. (Cf. *Ideal Werke, etc.*, v. *Roos*, 140 Misc. 298.)

Judgment for plaintiff. Counterclaim dismissed on the merits. Five days' stay.