William F. Christiana, J.
Plaintiff is a foreign corporation having its principal office and place of business at Great Barrington, Massachusetts. It seeks by action in this court to foreclose a mechanic’s lien filed against certain real property owned by the defendant situate in this county.
In June, 1959 the parties entered into an agreement whereby plaintiff undertook to perform certain work, labor and services on defendant’s realty. During performance of the work, disputes arose resulting in plaintiff filing the lien in question.
Defendant has pleaded, among other defenses, the bar of sections 210 and 218 of the General Corporation Law. These sections provide in effect that a foreign corporation doing business in New York shall not maintain an action upon any contract made by it in this State unless before the making of such contract, a certificate of its authority to do business in New York has been obtained from the Secretary of State. A separate trial of the issues raised by such defense was directed and has been held.
To be determined are (1) whether plaintiff corporation was actually doing business in New York at the time the contract was made and (2) whether the contract was made in New York.
As to the first question, it appears that for some two and one-half years prior to the making of the contract involved, plaintiff has been engaged in general construction work in this county. It has exercised its corporate functions here by erecting homes, remodeling interiors, doing jobbing work, refurbishing swimming pools and by other related operations. Its employees, who are 20 in number, are domiciliarles of Massachusetts. When performing their labors in New York, they motor daily in and out of Columbia County. While plaintiff denies advertising *1012 generally in New York, it has maintained a telephone listing in Columbia County and has erected signs at the site of its various New York operations indicating that it is the contractor engaged in performing the work being then undertaken. It transports material from its inventories to the locale of its New York State enterprises. Its machinery and equipment remain here until its contracts with its customers have been discharged.
Plaintiff stresses the fact that it maintains no salesmen in New York and neither does it have an office here. Moreover, it has no bank accounts in this State and its records are completely kept in Massachusetts. Its officers and directors all reside in Massachusetts and its employees reside there and are paid there. Other than the machinery and equipment which it brings here to do specified work, and material supplied for such work, plaintiff owns no property in New York.
In view of the premises, plaintiff strenuously contends that it is immune from legislation regulating its New York activities.
The problem presented in cases of this nature was succinctly stated in American Security Credit Co. v. Empire Properties Corp. (154 Misc. 191, 192) in the following language: “ To what extent must a foreign corporation function within our State before it can be held to compliance with out statutes! Must it be held that unless all the activities of the corporation are regularly transacted in our jurisdiction, the foreign corporation is exempt from compliance with our laws! If so, then this foreign corporation, by its contracts, is allowed to escape control and to unfairly pre-empt this domestic field, to the disadvantage of our own citizens. I do not believe that controlling precedent necessitates such a holding. If the transactions completed within our State are vital and essential to its business and are regularly conducted here, the foreign corporation is doing business here.”
It is axiomatic that each case involving the question of what constitutes “ doing business ” is to be determined in the light of its own particular facts. Thus, the court in Bonnell Co. v. Katz (23 Misc 2d 1028, 1030) remarked: “ There is of course no precise measure of the nature or extent of activities which are determinative of whether a foreign corporation is ‘ doing business ’ within this State. Each case must be decided on its own particular facts (Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208, 210)
In concurrence is Lebanon Mills Co. v. Kuhn (145 Misc. 918, 920) where the court said: “ The problem is essentially one of fact. There are no fixed standards of appraisal. The tokens of a forbidden activity must be found in the nature of the *1013 particular foreign corporate enterprise, and what is done in this State in the furtherance thereof ”.
While standards of evaluation must necessarily remain somewhat flexible, since no two given state of facts are equivalent, nevertheless, criteria whereby the local activities of a foreign corporation may be appraised are not entirely lacking.
Reference to a few guiding authorities will serve to illustrate the gammit of “ permissible latitude In International Fuel & Iron Corp. v. Donner Steel Co. (242 N. Y. 224, 230) the Court of Appeals noted: “ To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carfy on business with some continuity of act and purpose. (Penn Collieries Co. v. McKeever, 183 N. Y. 98.) ”
Likewise, in Suss v. Durable Knit Corp. (4 Misc 2d 666, 670-671), the rule was stated as follows: “ To be ‘ doing business ’ in this State implies a continuity of conduct, a systematic and regular course of conduct, in furtherance of its normal business dealings, rather than an isolated transaction or a casual or occasional transaction of a temporary character.”
Rules concerning corporate migrations were somewhat extensively discussed by the court in Lebanon Mills Co. v. Kuhn, supra, pp. 920-921):
“ 1 A foreign corporation may send its agents into this State to make contracts for the purchase or sale of goods without falling within the inhibitions of our statute.’ ” (International Fuel & 1. Corp. v. Donner S. Co., 242 N. Y. 224, 229.) It may, with like immunity, provide its agents with a meeting place or headquarters. (Id.) It may appoint a local selling agent; and its name may appear on the door of the place of business occupied by the local selling agent. (Schwarz v. Sargent, 197 N. Y. Supp. 216.) It may include its name in the telephone directory as of the address of its selling agent. (Rosenblatt v. Bridgeport Metal Goods Mfg. Co., 105 Misc. 92.) It may ship goods to commission merchants to be sold on consignment. (Brookford Mills, Inc., v. Baldwin, 154 App. Div. 553; Lederwerke v. Capitelli, 92 Misc. 260.) None of these activities, per se, constitute doing business in this State, within the meaning of section 218 of the General Corporation Law.
“Evidence of a single sale (New York Architectural Terra Cotta Co. v. Williams, 102 App. Div. 1), or two sales (Ozark Cooperage Co., Inc. v. Quaker City Cooperage Co., 112 id. 62), or even a 1 series of sales ’ (Angldile Computing Scale Co. v. *1014 Gladstone, 164 id. 370, 375) does not, per se, warrant a finding that a foreign corporation is ‘ doing business ’ here. Such activity falls within the permissible latitude of the occasional, non-continuous transaction of business.
“ Of course, the local activity of a foreign sales corporation may be so extensive and the sales so numerous, that one need hardly go beyond a tabulation of the local sales to conclude that the foreign corporation has established a branch of its business in this State, the apparent permanence of which is attested by both the volume and the continuity of its purely intrastate activities in New York.”
The law is briefly summarized in Corpus Juris Secundum (Yol. 20, Corporations, § 1829, p. 46) as follows: “ The general rule is that, when a foreign corporation transacts some substantial part of its ordinary business in a state, continuous in character, it is doing, transacting, carrying on or engaging in business therein, within the meaning of the statutes under consideration.”
It is the opinion of this court that plaintiff’s activities over a two and one-half-year period prior to this transaction constituted doing business in this State within the meaning of the statute. During such time, it has erected houses, remodelled kitchens, installed swimming pool filtrations and engaged in other related activities. It has directed its employees to come here over periods varying from two weeks to eight months to fulfill its New York contracts. It has stationed its machinery and equipment here for weeks and sometimes for months. It has transported material here to be incorporated in the work it performs here. Its signs, erected at the sites of its intrastate operations, publicly announced its availabilty for local business needs and its telephone listing solicited inquiries. Such corporate intrusions by plaintiff demonstrated 1 ‘ some continuity of act and purpose ” and appear definitely “ in furtherance of its normal business dealings ”. In fact, its intrastate transactions are in pursuance of the very purposes for which it was incorporated in Massachusetts.
True it is that none of these domestic activities standing alone would be sufficient to warrant intrastate regulation. Their combination, however, evinces something considerably more than a transient, sporadic, incidental, irregular local operation. A series of extensive and persistent transactions involving various phases of construction work with men and machines in this State over varying periods of time signify an intent to establish a permanent business situs in this State, Clearly, under such *1015 circumstances, if plaintiff can be immune from the dictates of the statute, then the statute becomes meaningless.
Considerable reliance is placed on the fact that plaintiff maintains no office for the transaction of business in New York. The maintenance of an office is merely a factor to be considered and it is not an essential element of doing business here. In Wood-ridge Heights Constr. Co. v. Gippert (92 Misc. 204, 205-206) in passing on this question, the court said: ‘ ‘ While I think the evidence was sufficient to show that the office at 30 Church Street was in fact, though not in name, an office of the plaintiff, it is not necessary that a foreign corporation maintain an office in this state in order to transact business here and to come within the prohibition of the statute.”
Plaintiff further argues that its transactions fall within the protection of the interstate commerce clause of the Federal Constitution. This claim appears untenable. It is to be observed that the work, labor and services in which plaintiff engages are in the nature of construction contracts. The weight of authority supports a conclusion that the undertaking of a single construction contract in a foreign jurisdiction may be sufficient to take the transaction without the scope of the Federal commerce clause and invoke a State’s regulatory legislation. This proposition is summarized in American Law Reports (vol. 55, p. 726) as follows:
“ [A]nd the consensus of opinion is that a mere incidental agreement to assemble a structure sold in interstate commerce does not destroy the nature of the transaction as one of interstate commerce and bring it within the state control. On the other hand, as pointed out in 11 A. L. R. 621 [Corporations, § 375], if the transaction is one in which the sale of a foreign-made product may be regarded rather as an incident of a contract for labor within the state, than as the chief incident of the transaction, the transaction falls within state control, and is not protected by the commerce clause of the Federal Constitution.
‘ ‘ This latter principle is applied when the question arises as to whether the doing of construction work within a state by a foreign corporation constitutes doing business within the state; and the courts, generally, hold in accord with the decision in the reported case (Western G-as Constr. Co. v. Com. ante, 717) that a foreign corporation which engages in doing construction work as distinguished from engaging merely in installing an article sold, though it engages in performing but a single construction contract, engages in business within the state, and therefore becomes subject to state laws regulating the doing of business therein by foreign corporations.”
*1016 Language of similar purport is contained in American Jurisprudence (vol. 23, Foreign Corporations, § 830, p. 378): “ It is generally held that a foreign corporation which engages in doing construction work, as distinguished from engaging merely in installing an article sold, although it engages in performing but a single construction contract, engages in business within the state and, therefore, becomes subject to state laws regulating the doing of business therein by foreign corporations. The performance of such work is not deemed to fall within the rule that a single or isolated transaction will not amount to doing business. Nor is it taken out of the scope of the statutes regulating the doing of business by virtue of the commerce clause, merely because supplies, materials, and articles involved in the work, and laborers to perform it, are, as provided in, or contemplated by, the contract, brought in from other states, since that may be regarded as an incident of a contract for labor within the state, rather than as the chief incident of the transaction. ’ ’
Conceding however, that at the time of the making of the agreement in question, the plaintiff was doing business in New York State the statute is nevertheless inapplicable unless the contract, pursuant to which the work was performed, was made in this State. (National Merchandising Corp. v. Powers, 8 Misc 2d 881; Fairmount Film Corp. v. New Amsterdam Cas. Co., 189 App. Div. 246, 249-250.) No useful purpose will be served in reviewing in detail the preliminaries leading to the agreement between the parties. It will be sufficient to note that contact was initiated when defendant approached plaintiff while its employees were performing certain jobbing work in New York at the home of a neighbor of defendant. Thereafter, negotiations continued by the exchange of letters, some written by plaintiff from Great Barrington, Massachusetts, and others by the defendant from her residence in this county. Plaintiff submitted from its home office what in effect constituted an estimate for the work to be performed. Conferences were held, some at Great Barrington and some here. Negotiations ultimately resulted in a meeting between plaintiff’s president and defendant at defendant’s home at Ancram, New York in June of 1959, at which time a written proposal offered by plaintiff was personally delivered to defendant. Such proposal was discussed and approved by both parties initialing the document at defendant’s home.
The rule is well settled that the place of the making of a contract is the place where the offer is accepted, or where the last necessary act to the completion of the contract was accomplished, *1017 or where the contract first creates a legal obligation. (Knights Prods, v. Donnen-Fuel Co., 20 N. Y. S. 2d 135, 139; International Fuel & Iron Corp. v. Bonner Steel Co., 242 N. Y. 224, 233, supra; Jones v. Metrolopitan Life Ins. Co., 158 Misc. 466; Williston, Contracts [3d ed.], Vol. 1, § 97, p. 356.)
No legal obligation was created until the parties met at the home of the defendant. On that occasion, a meeting of the minds took place, when plaintiff agreed to perform work, labor and services for defendant for a specified sum to which defendant then and there gave her assent. Everything prior to that time constituted mere bargaining or preliminary negotiations.
It is held that plaintiff was doing business in this State, that the contract was a New York State contract and that at the time of the making of such contract, plaintiff had not procured a certificate to do business in this State as required by the General Corporation Law. It necessarily follows that plaintiff had no right to bring an action to foreclose its mechanic’s lien. (Italian Mosaic Marble Co. v. Niagara Falls, 131 Misc. 281.)
The fifth separate defense alleged in defendant’s answer is sustained and the complaint is dismissed.